# Bankhead *v.* The State.

## *Indictment for Murder.*

1. *Jury only can fix the punishment in murder.*—By the Code of Alabama it is made the exclusive duty of the jury to determine the nature of the punishment in cases of homicide. Code, Secs. 4857, 4858. Hence it is error for the court trying a defendant under indictment for murder in the first degree, to enter an order, by request of the solicitor and consent of the defendant, that capital punishment is waived, and to put the defendant to trial without the benefit to him of a special venire, since it will be presumed that he consented to be tried by the regular jury in consideration of the waiver of capital punishment.

2. *Can a defendant charged with homicide consent in any case to waive special venire?  Query.*—The court does not decide or intimate an opinion as to whether a defendant charged with capital homicide may or not expressly consent to be tried by a jury impannelled in the mode and manner prescribed for impannelling juries in the trial of other felony cases.

3. *Record must show that special venire was granted in capital homicide.*—The record of the trial of a defendant for capital homicide must affirmatively show that a special venire was drawn in accordance with Section 5004 of the Code.

APPEAL from Lamar Circuit Court.

Tried before Hon. S. H. SPROTT.

Marion Bankhead was indicted for the murder of Doug Wells.  The evidence tended to show that the defendant and one Dewitt Fleming in going to church had to pass by the house of the deceased.  When near the house defendant said he wanted to stop and see the deceased about some reports or tales he had been telling.  Fleming told him not to stop, but he said, he would stop.  Defendant went to the gate and called "Hello."  Deceased came to the door and invited the two to come in.

The defendant said "No, you come her; I want to talk with you." The deceased came to the gate, and defendant said to him, "Who has told you the tales you have been telling on me?" Wells replied, "My son, Green, told me." The defendant said, "Your son, Green, told you a God-damn lie." Deceased said, "You must not curse here." Defendant said, "I want to tell you we were not wrestling; the school mistress and I were scuffling; I was trying to take a letter from her." The three walked some ten steps from the gate across the road, when the deceased said to the defendant, "I heard you were wrestling." To this the defendant replied, "Whoever told you we were wrestling told a God-damn lie." The deceased again told defendant not to curse there. The defendant continued to curse and talk loud and the deceased said to him, "You are a damned son of a bitch." The defendant then put his hand in his pocket saying, "My mammy doesn't raise bitches." The two then started to each other, and when they got together the deceased caught defendant in the collar and they "clinched." The defendant struck deceased about the neck and blood gushed from his neck.

In a few minutes after they "clinched" defendant broke away and ran, and deceased followed for a few steps in the direction he went, and cried out, "Go, you yellow son of a bitch." Just before they "clinched" the deceased said to defendant, "You need not put your hand in your pocket. I am not afraid of anything you have in your pocket." The deceased died in an hour or two after the cutting. There was evidence of the good character of the defendant. To the following portions of the oral charge the defendant excepted: "Whenever one man intentionally kills another with a deadly weapon, the law presumes that it was maliciously done —that it was done with formed design to take life, unless the evidence which proves the killing shows the excuse or extenuation."

"The court charges the jury that in case of homicide the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without

malice, and whenever malice is shown and is unrebutted by the circumstances of the killing or by the facts in evidence there can be no conviction for any less degree of homicide than murder."

"The court charges the jury that before the jury can acquit the defendant on the ground of self-defense three essential elements must concur, 1. The defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequences in this respect, of any wrongful word or act. 2. There must have existed at the time, either really or so apparently, as to lead a reasonable mind to the belief that it actually existed, a present, imperious, impending necessity to cut in order to save himself from great bodily harm. 3. There must have been no other reasonable mode of escape by retreat, or by avoiding the combat with safety."

3. "The court charges the jury that when the defendant sets up self-defense in justification or excuse for a killing the burden of proof is on him to show the jury by the evidence that there was a present impending danger, real or apparent, to life or limb, or of grievous bodily harm from which there was no other probable means of escape—unless the evidence which proves the homicide proves also the excuse or justification. If the jury have a reasonable doubt as to whether the defendant acted in self-defense, as the court has defined self-defense to be, then the defendant is entitled to the benefit of such doubt and entitled to an acquittal." The court refused to the defendant the following charges:

1. "I charge you, gentlemen of the jury, it is settled law of the State of Alabama that in all criminal prosecutions the defendant may give evidence of his previous good character not only where a doubt exists on the other proof, but even to generate a doubt of defendant's guilt."

2. "If defendant has proven a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed but for such good character."

3. "I charge you gentlemen of the jury the fact that defendant said to the deceased that his son had told a

[Bankhead v. The State.]

God-damned lie cannot be considered by you as evidence in arriving at the fact which was the aggressor or at fault in bringing on the fight which resulted in the death of Doug Wells."

NESMITH & NESMITH, for appellant, cited, *Burton v. State,* 115 Ala. 1; *Jordan v. State,* 81 Ala. 20; *Sylvester v. State,* 71 Ala. 17; *Spicer v. State,* 69 Ala. 169; *Caulemi v. The People,* 4 Smith (N. Y.) 128. (2). On the exceptions to oral charge.—25 So. Rep. 43; 113 Ala. 70. (3). On refusal of charges Nos. 1 and 2 requested by defendant.—116 Ala. 445; 107 Ala. 133.

CHARLES G. BROWN, Attorney-General, for the State, cited *Jordan v. State,* 81 Ala. 27; *Dismukes v. State,* 83 Ala. 287; *Miller v. State,* 107 Ala. 45; *Evans v. State,* 109 Ala. 13; *Ingram v. State,* 67 Ala. 67; *Hendricks v. State,* 26 So. Rep. 242; *Springfield v. State,* 96 Ala. 87; *Johnson v. State,* 94 Ala. 35; *Hurd v. State,* 440.

TYSON, J.—It apepars from the record that on Feb. 28th, 1899, the defendant was arraigned upon the indictment and plead not guilty. On the same day as shown by the recitals of the judgment entry an agreement was made that "the State by its solicitor W. B. Oliver waives capital punishment in said case, said defendant being present in open court consenting thereto—the court set Thursday the 9th day of March for the trial of same." It is manifest that it was the purpose and intent of this agreement to eliminate capital punishment and to make it only possible for the defendant to be punished in the event of a conviction of murder in the first degree by imprisonment in the penitentiary. This agreement, if it was competent for the solicitor to make, while it did not reduce the grade of the crime with which the defendant was charged, would have the effect of preventing the death penalty from being imposed by the jury. In short, if valid and binding upon the jury whose exclusive province it is, under the statute, to fix the punishment in murder in the first degree, relieved the case of all possibility of the imposition of capital punishment. With this feature of the punishment eliminated no necessity

existed for the drawing of a special venire, for it is only when a defendant may be punished capitally that he has a right to a special jury.—Code § 5004; *Burton v. The State,* 115 Ala. 1.

We do not think that the agreement can be construed as a waiver of a special venire by the defendant irrespective as to whether the agreement on the part of the solicitor to "waive capital punishment" is valid or invalid. The inducement which led him to consent, which resulted in not drawing a special venire, was the one that, under the agreement, the jury trying the cause would have no right to impose capital punishment. Doubtless had it been disclosed to him that the solicitor was without authority to bind the jury in this respect, he would never have consented. It cannot be presumed that he would have yielded so valuable a right, without receiving some benefit therefor. The benefit he contracted for was immunity against being hung. So then the important question is, did the solicitor with the consent of the judge presiding, have authority to deprive the jury of the right to impose capital punishment?

In all cases of homicide, the punishment must be fixed by the jury trying the case. Section 4858 of the Code reads, "Any person, who is guilty of murder in the first degree, must, on conviction, suffer death, or imprisonment in the penitentiary for life at the discretion of the jury etc."

Section 4857 provides that "when the jury find the defendant guilty under an indictment for murder, they must ascertain by their verdict whether it is murder in the first or second degree; but if the defendant on arraignment confesses his guilt, the court must proceed to determine the degree of the crime, *by the verdict of a jury,* upon an examination of the testimony and pass sentence accordingly."

Here we see that not only the degree of the crime must be determined by the verdict of a jury, upon an examination of testimony, but that the punishment to be inflicted on the defendant rests in the discretion of the jury. If the crime is murder in the first degree, the jury must determine whether the punishment shall be death or imprisonment in the penitentiary for life. As said in

[Bankhead v. The State.]

*Fields v. The State,* 47 Ala. 607, "testimony is as neces-
sary and important to enable the jury to exercise this
discretion prudently and properly, as to enable them to
determine the guilt or innocence of the defendant." The
duty being clearly imposed upon them and upon them
alone both as to the degree of the homicide and the pun-
ishment, no one has the authority to assume their pre-
rogative in this respect. Nor can the responsibility of the
performance of the duty imposed upon them of fixing
the punishment be taken from them and legally exer-
cised by the prosecuting attorney and the judge. The
jury, notwithstanding the opinion of the solicitor as to
the weight and effect of the evidence not showing such a
case in which capital punishment ought to be imposed,
may be of a different opinion. Should such be their
honest conclusion, under their oath they would be bound
to punish the accused capitally without regard to the
opinion entertained by any one else.

What we have said in nowise contravenes or impairs
the province of the court to make up the issues which
are to be submitted to a jury. Nor do we mean to be
understood as intimating an opinion as to whether a
defendant charged with a capital offense may or not ex-
pressly consent to be tried by a jury impannelled in the
mode and manner prescribed for impannelling juries in
the trial of other felony cases. Neither of these ques-
tions is involved in the case under consideration. Here
is simply an attempt to control the action of a jury by
agreement, in a matter about a duty exclusively devolv-
ing upon them, on an issue which was submitted to them
under the charge in the indictment.

It results from what we have said that this cannot be
done, and the record failing to show affirmatively that a
special venire was drawn in accordance with the require-
ments of section 5004 of the Code, the case must be re-
versed.—*Burton v. State,* 115 Ala. and authorities there-
in cited. This is the only reversible error to be found in
the record.

The statement made by the deceased to the defendant
was properly admitted in evidence as part of the *res*
*gestae.*—*Dismukes v. The State,* 83 Ala. 287; *Jordan v.*
*The State,* 81 Ala. 27.

[Avery v. The State.]

There was no error in the oral charge of the court of which defendant can complain.—*Miller v. The State,* 107 Ala. 46; *Sylvester v. The State,* 72 Ala. 201; *Gibson v. The State,* 89 Ala. 121.

Charges 1, 2 and 3 requested by the defendant were properly refused.—*Springfield v. The State,* 96 Ala. 87; *Johnson v. The State,* 94 Ala. 35.

Reversed and remanded.