(82 South. 503)

HOUSTON et al. v. STATE. (4 Div. 810.)

(Supreme Court of Alabama. May 22, 1919. Rehearing Denied June 30, 1919.)

1. CRIMINAL LAW ⚖️1166(1)—HARMLESS ERROR—SERVICE OF JURY LIST.

It is not prejudicial error for the court to refuse to quash the venire on the ground that no list of jurors was served, where accused was present in court when an order for the venire was made and in pursuance thereof 81 names were drawn from the jury box, although the papers served upon defendant contained only a list of 81 names, with nothing to indicate what the list was; accused not claiming that he was misled or misunderstood the meaning of the papers served upon him.

2. CRIMINAL LAW ⚖️368(1)—HOMICIDE ⚖️156(1)—RES GESTÆ—EVIDENCE—MALICE.

In a prosecution for murder by defendants, who went with their sister to the home of her father-in-law, on Monday, to recover the possession of her infant child, at which time the father-in-law was killed, court did not err in excluding evidence that husband on Thursday before killing had come to where their sister was sick in bed and had taken her child and carried it away to the home of deceased, and that on Sunday their sister went to the home of deceased and tried to get her baby, and that deceased had refused to let her have the child or to nurse it, such occurrences not constituting part of the transaction in which deceased lost his life, nor tending to eliminate the elements of malice by referring defendants' acts to passion which had not had time to cool.

3. HOMICIDE ⚖️112(1)—SELF-DEFENSE—AGGRESSION.

One who went armed with a sister for the purpose of obtaining from her father-in-law possession of her child by force, at which time the father-in-law was killed, could not claim that he killed in self-defense.

4. CRIMINAL LAW ⚖️1170(2)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

It was not error to exclude evidence as to facts which appeared elsewhere in the evidence without dispute.

5. HOMICIDE ⚖️339—HARMLESS ERROR—EVIDENCE.

Where accused went to the house of deceased with his sister to recover possession of the sister's infant child by force or arms, at which time deceased was killed, accused was not harmed by exclusion of evidence that it was deceased's habit to be away from home at the time of day at which accused went there, such evidence, although tending to show a desire to avoid opposition, not changing the illegal aspect of the enterprise.

6. WITNESSES ⚖️366—BIAS.

In a prosecution for homicide, it was relevant for the state to show that a witness for accused was indicted, charged with complicity in the homicide for which accused was being tried, for the purpose of showing the bias of the witness.

7. CRIMINAL LAW ⚖️824(8)—ADMISSION OF EVIDENCE—LIMITING EFFECT—REQUEST.

Where evidence is admissible, in a criminal case, for one purpose, the duty rests upon the accused, if he apprehends more harmful effect from the evidence than that for which it was admitted, to move the court to a statement of its limited legitimate office and effect by requesting a special charge on the subject.

8. HOMICIDE ⚖️300(5) — MISLEADING INSTRUCTION—AGGRESSION.

In a prosecution for homicide, defendants killing their sister's father-in-law at the latter's home, which they invaded for the purpose of gaining possession of the sister's child by force, and alleging self-defense, the court properly refused to instruct that defendants had the right to go armed if their purpose was peaceable, such an instruction being misleading under the circumstances; the enterprise being one in which they proposed to take the law into their own hands in a manner invasive of the rights of deceased and calculated to bring on a difficulty.

Mayfield and Gardner, JJ., dissenting.

Appeal from Circuit Court, Henry County; H. A. Pearce, Judge.

Bolon Houston and others were convicted of murder, and they appeal. Affirmed.

The objections to evidence and the facts sufficiently appear from the opinion.

The following charges were refused the defendant.

(9) The defendant and each of them had a right when they went to the house of the deceased to go on, provided they did so not for the purpose of aggressing, but for the purpose of defense, if they should by chance be unlawfully attacked by any one with a deadly weapon.

(10) The court charges the jury that Irene Creel and the defendants Bolon, Grady, and Kurvie Houston had the right to go to the house of John Creel on the day of the killing in a peaceable and quiet way and manner to get possession of the baby of Irene Creel, and if the jury believes from the evidence that they went for such purpose solely and in such way and manner, then they agreed to do a lawful act or thing, and not an unlawful act, and they were not conspirators; and if the jury believes this to be the case from the evidence, then they cannot convict any one of the defendants for the act or acts of any one of the other defendants, unless the jury believes further from the evidence that such defendant or defendants aided or abetted such act or acts, or that said defendant or defendants actually conspired to do the killing in addition to such lawful act.

(1a) If the jury believe from the evidence that at the time that Irene Creel went into the home of John Creel she went there for the purpose of securing possession of her child with no intention of difficulty, and also believe from the evidence that when her brothers Bolon and Grady Houston followed her into the house they were unarmed and had no intentions of bringing on a difficulty, and also believe from the evidence that neither one of the three had any expectations of meeting any opposition of any kind, but the purpose of Irene Creel was simply and solely to take

away the child, and that while in the house John Creel did make an attack upon Irene Creel and choke her and force her to the wall, that Bolon and Grady Houston if they were free from fault in bringing on the difficulty had a legal right to go to the assistance of their sister Irene Creel.

(1b) Irene Creel had a right to go to the home of John Creel and secure possession of her child if from the evidence you believe that Charlie Creel, her husband, and the father of the child did not reside there.

(1c) If the jury believe from the evidence in this case that Irene Creel, the sister of the defendant, went to the home of John Creel for the purpose of obtaining possession of her child, and that her brothers went with her with no intention of provoking a difficulty, and while there John Creel made an attempt to choke the said Irene Creel, and was choking her and had her back up against the wall, trying to take her baby from her, then her brothers, the defendants in this case, had a right to go to her assistance. if they believed that she was in imminent danger.

The paper served on the defendants contained the list of 81 jurors, followed by a copy of the indictment in the case, and the following indorsement:

"Was served on the defendants and each of them as a list of the names of all the jurors summoned for the week in which the trial was set and those drawn by the court as special jurors with copy of the indictment."

McDowell & McDowell, of Eufaula, and Farmer, Merrill & Farmer, of Dothan, for appellants.

J. Q. Smith, Atty. Gen., and Horace Wilkinson, Asst. Atty. Gen., for the State.

SAYRE, J. Defendants, Bolon, Curvin, and Grady Houston, were jointly tried on an indictment charging murder in the first degree. The verdict found Bolon guilty of murder in the first degree; Curvin and Grady were convicted of murder in the second degree. All the defendants have joined in this appeal.

[1] Appellants jointly and severally moved to quash the venire on the ground that a list of the names of the jurors summoned for the trial of the cause had not been served upon them as required by law and the order of the court. On the hearing of this motion appellants proved that the paper served upon them contained the names of 81 persons over against which consecutively were set numbers from 1 to 81—this and nothing more. There was nothing upon the paper to indicate more specifically its character or purpose. The paper was not what it ought to have been; it should have been so prepared as to obviate the possibility of a motion against it on the ground taken by appellants. Still, as the record shows, appellants had been present in court when the order for the venire was made, and in pursuance thereof 81 names drawn from the jury box; nor was it denied

that the paper served upon them contained a correct list of the jurors drawn and summoned for the trial; the point of the objection was that the paper served upon them did not, by something in addition to the list of names, betoken its character and purpose. In view of the facts thus far stated and the absence of any evidence tending to show that appellants had been misled or had, in fact, misunderstood the meaning of the paper served upon them, the court is of opinion that they suffered no detriment in respect of any substantial right, and that the informality of the list served upon them should not be allowed to work a reversal.

It was clear upon the proof, and was not denied, that the three appellants went with their sister to the home of deceased for the purpose of recovering possession of her infant child. Deceased was the paternal grandfather of the child, which a few days before had been taken there by its father, the husband of the sister of these appellants. Appellants went armed with shotguns and a pistol. Two of them, leaving the third in an automobile and in charge of the guns at the front gate, went with their sister into the home of deceased, through the house and into the kitchen, where the sister took the child from the arms of its grandmother and started, with her brothers, back through the house to the waiting vehicle. A difficulty ensued, in the course of which the appellant Curvin, who had until then remained with the automobile, brought the guns to the front door. The parties then scuffled out toward the gate near which, in a few moments, deceased was killed by a gunshot wound through the head. This, of course, is a mere rough statement of the facts shown by the evidence; but it suffices to disclose the merits of the contention for a reversal, and no further detail is necessary. Appellants insisted in the trial court that deceased was killed by an accidental discharge of a gun in the hand of one of them. That issue was submitted to the jury, no questions for review have arisen out of it, and there will be no occasion for further reference to it. Appellants insisted also upon their plea that, in taking the life of deceased, they had acted in self-defense or in defense of their sister, and in support of this plea offered to show by the witness Benton that, on Thursday before the killing, which took place on Monday, their sister's husband in company with the witness had gone to the home of their father, Sam Houston, where their sister was sick in bed, had taken her child, and had carried it away to the home of John Creel, the deceased. At a later stage of the trial appellants offered to make the same proof by their sister, who testified as a witness for them. Appellants also offered to show that on Sunday, the day before the killing, their sister, in company with one Wise, went to the home of de-

ceased and "tried to get her baby," and, after deceased had refused to let her have the child "tried to get John Creel to let her nurse her baby," who was sick. This testimony the court, on the state's objection, refused to receive, and the several rulings to that effect are assigned for error.

[2] The occurrences which appellants thus sought to prove could not in any just sense be said to constitute parts of the transaction in which deceased lost his life, nor can it be said that the killing followed so closely upon these occurrences that proof of them should have been admitted as tending to eliminate the element of malice by referring appellants' act to passion which had not had time to cool. In Armor v. State, 63 Ala. 173, cited on the brief for appellants, it was held that conduct and declarations of the defendants shortly before the killing were admissible against them, the court being of opinion that these circumstances, along with the fact of the killing, were parts of one continuous transaction. In Ryan v. State, 100 Ala. 105, 14 South. 766, also cited, a majority of the court, for some reason not stated in the opinion, held that the details of a conversation between defendant and deceased, which preceded the killing by a short interval, should have been admitted. Whatever the reason for the ruling, we do not see that it sheds any appreciable light on the wholly different case at bar.

[3] Appellants seek to sustain their allegation of error upon the ground that the testimony in question would have tended to show who was the aggressor. They cite Gafford v. State, 122 Ala. 54, 25 South. 10, and two cases from the Court of Appeals. We think it clear beyond doubt that when appellants, armed, went to the home of the deceased and invaded that home in the manner and under the circumstances which have been stated, they did an act calculated to provoke a difficulty, and thereby disabled themselves, to invoke the doctrine of self-defense. Whatever may have been the right of the mother in other circumstances, here the undisputed fact was that her child was in possession, virtually, of its father, that status had continued for some days, and, as against the father, to say the least, neither she nor others acting for her had the right to assert her claims by force. Appellants insisted in the trial court, it is true, that they went armed to prevent a possible assault upon themselves, and in this court it is insisted that it was for the jury to determine their purpose, and in consequence that the evidence in question should have been admitted in aid of that determination. But the undisputed fact is that they invaded the home of deceased to right an alleged wrong committed by his son, whereas, even if it be assumed that deceased knew by what means his son had come into possession of the child, and by keeping or allowing his family to keep the child and by what else appellants sought to charge to his account had made himself a party to the previous conduct of his son, it cannot be assumed that the mother had a better right to the child than the father, nor was the trial of this indictment a proper place for evidence as to the right of their respective claims. The law provided a peaceable remedy, if wrong was done, and to that remedy appellants should have had recourse. The doctrine that the plea of self-defense is not available to a defendant who is not free from fault in the creation of a necessity to take life is "too important, too conservative of human life and of good order to allow it to be frittered away." Johnson v. State, 102 Ala. 19, 16 South. 105. And in McQueen v. State, 103 Ala. 17, 15 South. 826, it is said that—

"The law admits no qualification of this requirement. The defendant must have been free from all fault * * * on his part which had the effect to provoke or bring on the difficulty." Griffin v. State, 165 Ala. 29, 50 South. 962; Crawford v. State, 112 Ala. 1, 21 South. 214.

In this view of the case the adjudications cited by appellants are of no consequence. Appellants were in the wrong when they went upon the premises and into the home of deceased, not to negotiate for the child—for there is no evidence that they offered or ever intended to negotiate—but to retake the child in the manner and under the circumstances stated above. On the undisputed evidence they, by their conduct in the premises, put themselves without the pale of the law of self-defense, and thereby reduced the decision in the Gafford Case to a state of irrelevancy, and rendered immaterial all evidence as to the state of mind of deceased save as that state of mind was demonstrated by conduct at the immediate time of the killing.

[4] On the cross-examination of Mrs. Creel, wife of the deceased and a witness for the state, appellants asked the following questions:

"Irene Creel (sister of appellants) said she came after the baby, didn't she?" and "When Irene went out of the cook room she had her baby with her, didn't she?"

These questions called for facts of the res gestæ of the killing, and no reason occurs to us why they should not have been allowed. However, there should be no reversal on account of the action of the court in sustaining objections to them, for evidently appellants expected affirmative answers, and both the facts inquired about appeared elsewhere in the evidence without dispute, in the evidence offered by the defendants as well as that offered by the state, that is, it appeared that appellants and their sister went after her baby—that was the excuse they offered for going to the home of deceased—and also that Irene had her baby in her arms when she

went out of the cook room. These errors were harmless therefore.

[5] Some other exceptions were reserved to the court's rulings on questions of evidence; but in our judgment these other exceptions related to matters which were inherently of no sufficient consequence to justify a reversal, or the facts which they were intended to elicit were abundantly and without dispute shown in other parts of the evidence. As for the offer to prove the habit of deceased to go away to his work on the farm in the early forenoon—the killing occurred in the early forenoon—we may add that this proposed evidence could not have operated to the advantage of appellants. It could shed no favorable light upon the enterprise in which they were engaged. While it may have tended to show the desire of appellants to avoid opposition from whom effective opposition would most likely be expected, it by no means could have changed the general aspect of their enterprise nor the legal effect of what they did when they found deceased at home actively opposing their scheme to carry away the child.

[6, 7] The indictment against appellants' witness Irene Creel—a separate indictment charging the witness with complicity in the homicide for which appellants were on trial —was relevant and material for the limited purpose of showing the bias of the witness. If appellants apprehended a further, different, or more harmful effect from the evidence, it was for them to move the court to a statement of its limited legitimate office and effect by requesting a special charge on that subject.

[8] Charge 9, requested by appellants, was properly refused. Appellants had the right, of course, to go armed if their purpose was peaceable and in all respects proper; but, however much they may have desired to avoid the necessity for a resort to force, they had no right to arm themselves for an enterprise in which they proposed to take the law into their own hands or to assert their supposed right in a manner invasive of the rights of deceased and calculated to bring on a difficulty. The charge was misleading in view of the fact that appellants were in the wrong and could have no right to resort to deadly weapons in a difficulty provoked by their own wrongful conduct. The generalization on this subject to which appellants refer in Lett v. State, 1 Ala. App. 18, 56 South. 5, even if authority in this court, holds nothing to the contrary, and it seems quite clear, from what further the learned judge had to say in that case, that he had in mind the necessary reservation which we find lacking in the charge here under consideration. Charges 10, 1a, 1b, and 1c, refused to appellants, are open to criticism on the same ground. All these charges tended to lead the jury to the conclusion that appellants had the legal right to go upon the premises and into the home of deceased on an errand which was essentially hostile in fact, provided they had no intention otherwise to provoke a difficulty. They had no such right, of course. Whatever their purpose, they were responsible for every wrongful word or act which tended to bring on a difficulty.

Other charges refused to defendants, and mentioned in rather a casual way in their brief, need no special mention. Such of them as do not fall within the scope of what has been said above were covered by the court's oral charge to the jury or by the special instructions given on behalf of defendants.

We have found no reversible error. The judgment of conviction must be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and THOMAS, JJ., concur. MAYFIELD and GARDNER, JJ., dissent.

GARDNER, J. (dissenting). The child of defendants' sister was not in the possession of the father, but of its paternal grandparents, the father residing elsewhere. The mother had the legal right to acquire possession of her child under the circumstances shown in this case, if this could be done without committing a breach of the peace. I am therefore unwilling to hold that the defendants as a matter of law have placed themselves without the pale of the doctrine of self-defense, and conclude that some of the evidence excluded came within the influence of the Gafford Case, and should have been received.

There were also requested charges refused which bore materially upon defendants' case. They were, in my opinion, correct, and not sufficiently embraced in other charges or in the oral charge of the court, and their refusal was error.

I therefore respectfully dissent.

MAYFIELD, J., concurs in the foregoing dissent.

MAYFIELD, J. In concurring in what Justice GARDNER has said above, I desire to add the following for the purpose of again calling attention to the importance of amending our statutes as to the trials of homicide cases:

If it be conceded that the proffered evidence which was excluded over defendants' objection was not admissible as tending to show self-defense, or any other defense in justification, it was indubitably relevant as tending to aid the jury in determining the degree, and in fixing the punishment. Suppose these defendants had pleaded guilty, as charged in the indictment, and the jury or court (if such was allowable) was hearing testimony only for the purpose of enabling them to intelligently find the degree of the crime, and to determine the kind and severi-

ty of punishment which ought to be inflicted, would they not desire the facts which the excluded evidence tended to show? I do not believe that there is a court or a judge in the world, if it or he had to fix the degree of the crime and the punishment, who would not compel, much less allow, the evidence excluded on this trial. I do not believe that there is a jury in the world that would not desire to hear it before being required to fix the punishment.

I concede that there are decisions of this court which justify the action of the trial court in excluding this evidence, if it did not tend to prove the guilt or innocence of the defendants. As I understand it, Justice GARDNER dissents as to this evidence only on the ground that, in his judgment, it tended and was admissible to show self-defense or justification; but the main ground of my dissent is that it was admissible even if self-defense was not availing.

As I tried to point out in the case of Warren v. State, 197 Ala. 340, 72 South. 624, this hard rule of evidence against defendants has resulted from the failure of the courts to take account of the radical statutory changes of our law as to the trial of homicide cases. Before the passage of our statutes on the subject, juries had nothing whatever to do with ascertaining the degree of the crime or fixing the punishment. Then, of course, no evidence which was not proper on the trial; but if the jury returned a verdict of guilty, then the court heard all such evidence as was excluded on this trial, and that in Warren's Case, in order to aid him in intelligently fixing the degree and punishment.

Chief Justice Peck in Fields' Case, 47 Ala. 603, 11 Am. Rep. 771, pointed out the change of the statutory law as to the tribunal fixing the punishment—necessitating the change of the rules of evidence in such cases—and this case was noted, cited, and approved by the leading text-book writers on the subject of criminal evidence, and was followed and quoted approvingly by this court down to the case of Bankhead v. State, 124 Ala. 14, 26 South. 979. In Green v. State, 143 Ala. 10, 39 South. 362, however, a dictum led this court astray. It was there said to have been overruled in a number of cases then cited. An examination of the cases cited as overruling the Fields' Case, supra, as to the point here in question, will show that the court failed to note the exact question decided in the Fields' Case. I submit the Fields' Case did not decide that the character of deceased was admissible in evidence in all homicide cases. I attempted in Warren's Case, 197 Ala. 340, 342, 72 South. 624, to trace the history of these rules of evidence, and it will serve no good purpose to here repeat them.

In my judgment, the failure to observe these rules of evidence declared by this court from the time of Quesenberry's Case, 3 Stew. & P. 308, more than three score and ten years ago, and Fields' Case, 47 Ala. 603, 11 Am. Rep. 771, down to Bankhead's Case, 124 Ala. 14, 26 South. 979, is the prime and chief cause of juries so often disregarding instructions of judges in the trial of criminal cases. In these cases they know there are' facts which are not allowed to be introduced in evidence, which tend to palliate the crime and mitigate the offense, and they act on it in disregard of the instructions of the court. To restore the common law in this respect or to amend the statutes so as to expressly allow such evidence in homicide cases would tend to prevent any occasion for criticizing juries for enforcing what is popularly called the "unwritten law" of homicide cases.

This case and Warren's Case, in my humble judgment, cry loudly for a change of the statutes on this subject. I cannot believe that the law of this state does or ought to deny these defendants the benefit of self-defense. "Breathes there the man" who would refuse to aid his bereaved sister in the search of her child that had been taken from her by force or stealth, even by its father and her husband, for the purpose of permanently depriving her of it, when it was a mere nursing infant, and by nature needed her custody and attention? "If such there be" could he refuse to defend his sister when assaulted by her father-in-law, who was choking her and attempting to take the child from her arms by force although she had found the child in his house, and was attempting to carry it away without his consent? I do not believe such man can be found. I do not believe he forfeits his right of self-defense by defending his sister under these circumstances.

One of the leading criminal cases in this state, and one which has been cited probably as often as any other, in my judgment states the law correctly on the subject of homicides committed under circumstances like the facts in this case. There the father and mother had quarreled over the custody of infant children, and the deceased took the part of the wife; and a difficulty ensued between him and the father, Oliver, who killed the stranger who interceded in behalf of the wife. In that case the court said, among other things as to the rights and defenses of the respective parties:

"Nor can we think that if the father and mother quarrel, and, being about to separate, they both contend for the possession of their infant children, that a stranger would necessarily be guilty of a felony if he interfered and protected the possession of the mother, or even took the child from the father and gave it to the mother, for he might not be influenced by the felonious intent of detaining the child from the father. Such conduct, however, without regard to the intent, would be a violation of the rights of the father, for every father is entitled to the possession and control of his child; but whether it would be a trespass or a felony would depend on the intent with which the act was done. To

constitute this offense the criminal intent and the act must both concur, and this intention is a fact to be inferred from the evidence, and can be ascertained only by the jury." Oliver v. State, 17 Ala. 587.

If a stranger may take the part of the wife in a contention between her and her husband as to their children, surely the brothers of the wife can take her part in a contention between her and her father-in-law as to the custody of the children, without thereby losing all right to self-defense.