(109 So. 566)

McBRIDE v. STATE.    (2 Div. 365.)

(Court of Appeals of Alabama.    June 15, 1926. Rehearing Denied Aug. 31, 1926.)

1. Homicide ☞109.

Accused, to defend on ground of self-defense, must be free from fault in bringing on difficulty, and there must have been impending peril to life or limb without convenient or reasonable mode of escape by retreat or by declining combat.

2. Homicide ☞151(3), 244(3).

That defendant pleading self-defense was not free from fault in provoking difficulty must be established by state beyond reasonable doubt.

3. Homicide ☞151(3), 244(3).

That there was present impending peril to life or limb, and no convenient or reasonable mode of escape by retreat or declining combat, must be shown by defendant to such extent as to raise reasonable doubt of guilt.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

### 4. Homicide ⊂⊃112(2).

Where defendant entered deceased's home, without invitation, with drawn weapon and demanded deceased's person, he could not afterward invoke doctrine of self-defense.

### 5. Homicide ⊂⊃109.

In application of doctrine of self-defense, court should not so construe it as to work hardships on defendants or to bring doctrine into disrepute.

### 6. Criminal law ⊂⊃763, 764(3, 4).

If no evidence under most reasonable construction of testimony tends to show elements necessary to plea of self-defense, court may charge accordingly.

### 7. Criminal law ⊂⊃763, 764(8).

On showing undisputed evidence that defendant without warrant entered deceased's home with drawn weapon and demanded his person, instruction that, if jury believed evidence beyond reasonable doubt, they could not acquit, was proper.

### 8. Homicide ⊂⊃275.

Where evidence showed that deceased at time of shooting was attempting to get away from defendant, refusal to permit jury to pass on question whether defendant fired to prevent commission of felony was not error.

### 9. Witnesses ⊂⊃290.

Where witness had already testified as to position of deceased when defendant shot him, refusal to permit her on redirect examination to answer such question was not error.

Bricken, P. J., dissenting.

Appeal from Circuit Court, Marengo County; John McKinley, Judge.

John McBride was convicted of manslaughter in the first degree, and he appeals. Affirmed.

S. W. Compton, of Linden, and Pettus, Fuller & Lapsley, of Selma, for appellant.

The giving of the affirmative charge for the state constituted reversible error. King v. State, 151 Ala. 12, 44 So. 200; Haney v. State, 20 Ala. App. 236, 101 So. 533; Hargrove v. State, 147 Ala. 97, 41 So. 972, 119 Am. St. Rep. 60, 10 Ann. Cas. 1126; Byrd v. State, 213 Ala. 333, 104 So. 830; Nichols v. State, 4 Ala. App. 115, 58 So. 681; Burke v. State, 71 Ala. 377. The court erred in refusing to allow defendant to show what happened after defendant left the house. Watkins v. State, 89 Ala. 82, 8 So. 134; Thomas v. State, 13 Ala. App. 50, 69 So. 315; Storey v. State, 71 Ala. 337.

Harwell G. Davis, Atty. Gen., and S. F. Hobbs, of Selma, for the State.

A defendant cannot invoke the doctrine of self-defense, unless he was entirely free from fault in bringing on the difficulty. Crawford v. State, 112 Ala. 1, 21 So. 214; Burton v. State, 141 Ala. 32, 37 So. 435; Lewis v. State, 51 Ala. 1; Wills v. State, 73 Ala. 362; Gilmore v. State, 141 Ala. 51, 37 So. 359; McQueen v. State, 103 Ala. 12, 15 So. 824; Griffin v. State, 165 Ala. 29, 50 So. 962; Madry v. State, 201 Ala. 512, 78 So. 866; Houston v. State, 203 Ala. 261, 82 So. 503.

SAMFORD, J. The defendant was indicted on a charge of murder and convicted of manslaughter in the first degree.

After the evidence was all in, the court, at the request of the state in writing gave this charge:

"I charge you that, if you believe the evidence in this case beyond a reasonable doubt, you cannot acquit the defendant."

This charge was given by the court upon the theory that the evidence without dispute fixed the homicide as the intentional act of defendant and that the undisputed facts precluded the defendant from interposing the plea of self-defense. It is conceded in brief of counsel for appellant (and we think correctly so) that:

"The correctness of giving the general affirmative charge in this case depends on whether there was any evidence tending to support the doctrine of self-defense."

It can hardly be contended that there is any conflict in the evidence that deceased was killed and that, by the defendant, under circumstances related in the testimony in such sort as to constitute the killing unlawful, unless such killing could be justified under the plea of self-defense.

[1-3] Before this defense can avail the defendant to the point of justification, he must be free from fault in bringing on the difficulty; it must appear that there was a present impending peril to life or limb, and that there was no convenient or reasonable mode of escape by retreat or by declining combat. 8 Mich. Digest, 191, par. 75. That the defendant was not free from fault in provoking or bringing on the difficulty is a burden to be carried by the state and to be established beyond a reasonable doubt. The other two elements must be shown by the defendant to such an extent as to raise in the minds of the jury a reasonable doubt of his guilt. As to the various elements of the doctrine and when it can be invoked, this court has written at length in Cooke v. State, 18 Ala. App. 416, 93 So. 86.

With the foregoing rules in mind, let us see if the facts would justify a submission of the plea of self-defense to the jury. Paul Moore, a negro, was in his own home quietly eating his breakfast, about 9 o'clock in the morning; this defendant and Clayton Ross, two white men, came to defendant's house, without invitation or warrant, the defendant armed with a drawn pistol; the two went to the "gallery," and defendant called to Moore

and "told him he had come after him." Moore made no reply, whereupon defendant entered the house and the room with his drawn pistol. Moore fled, jumped out of the window, snapped a pistol at Ross as he ran. Defendant pursued Moore, and, coming upon him at the southeast corner of the house, shot him and killed him. The defendant's testimony was that Moore had a pistol, "trying to work it," when he met defendant. On the other hand, the state's witnesses all say that Moore was under the house when defendant shot him. As to which of those statements are true we express no opinion; as we see it, that fact could not affect the question here presented. Every fact proven in this case and bearing on the question proves beyond any peradventure that the defendant was not free from fault in bringing on this difficulty.

[4] When defendant entered Moore's home without invitation and in opposition to the will of the owner, he was a trespasser. When he entered with a drawn weapon and demanded the person of the owner, he invited an attack by Moore, who could legally have ejected him vi et armis. Under the undisputed facts in this case the defendant could not invoke the doctrine of self-defense, first, because the evidence shows without conflict that he was not free from fault in bringing on the difficulty. Crawford v. State, 112 Ala. 1, 21 So. 214; Burton v. State, 141 Ala. 32, 37 So. 435; Lewis v. State, 51 Ala. 1; Wills v. State, 73 Ala. 362; Gilmore v. State, 141 Ala. 51, 37 So. 359; Houston v. State, 203 Ala. 261, 82 So. 503.

[5-7] Passing the question of freedom from fault, there is no evidence in this case from which the jury could have reasonably drawn the conclusion that the defendant could not have retreated without apparently increasing his peril. Moore was fleeing; he never offered any resistance; the defendant was pursuing and could have abandoned the pursuit at any time without damage to himself. Under the facts, there was never any element of danger to defendant which would have prevented a retreat. Nor does there appear anywhere in the record evidence of a pending necessity on the part of defendant to take the life of Moore. The doctrine of self-defense is the law of necessity. In its application courts should not so construe its requirements as to work hardships on defendants or to bring the doctrine into disrepute and ridicule by reasonable men. If there is no evidence under the most reasonable construction of the testimony in favor of defendant's contention tending to show those elements necessary to the plea then the court is authorized to charge accordingly. Cooke v. State, 18 Ala. App. 416, 93 So. 86. The court did not commit error in giving the written charge requested in writing by the state.

[8] It is also contended that the jury should have been permitted to pass upon the question as to whether defendant fired the shot which killed Moore in order to prevent the commission of a felony. We recognize the rule that, under certain circumstances, a party is justified in taking life in order to prevent the commission of a felony. Suell v. Derricott, 161 Ala. 259, 49 So. 899 et seq., 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636. But here there is no evidence that Moore was in the act of committing a felony at the time he was killed by defendant; on the contrary he was making every effort to get away from defendant, who was pursuing him with a pistol.

[9] There was no error in refusing to permit the witness Mrs. Ross on redirect examination to answer the question, "In what position was Paul when McBride shot him?" This witness had already testified on this point in her examination in chief, and this question called for a repetition of testimony already given.

There were some other exceptions reserved by defendant during the taking of the testimony; none of these show merit and are not insisted upon in brief of counsel.

We find no error in the record, and the judgment is affirmed.

Affirmed.

BRICKEN, P. J. (dissenting). In this case, as in all criminal cases, the presumption of innocence attended the accused upon his trial; this presumption is evidentiary in its nature and must be overcome by sufficient evidence, under the required rules, to prove the guilt of the defendant beyond a reasonable doubt. Whether such evidence has been adduced is almost invariably a question for the jury and not for the court. In the case of Waters v. State, 117 Ala. 108, 22 So. 490, the court said:

"The presumption of innocence attends the defendant in a criminal case until overturned by evidence which convinces *the jury* beyond a reasonable doubt of his guilt."

In Newsom v. State, 107 Ala. 133, 18 So. 206, by Brickell, C. J., the Supreme Court said:

"The legal presumption of innocence is to be regarded *by the jury* in every case, as a matter of evidence, to the benefit of which the accused is entitled, and, as matter of evidence, it attends the accused until his guilt is, by the evidence, placed beyond a reasonable doubt."

In this case the court gave the general affirmative charge for the state. In this there was error. The well-known principles above announced, coupled with the manifest conflict in the evidence, presented questions for the jury alone and not for the court; and, in giving said charge, the court flagrantly invaded the province of the jury and usurped its prerogatives.

In the case of Sharpley v. State, 18 Ala. App. 620, 93 So. 210 (opinion by Samford, J.), this court said:

"This charge invades the province of the jury, and takes away from them the right to pass upon the guilt or innocence vel non of the defendant, based upon a consideration of all the evidence. This court renews the admonition as announced in Scott v. State, 110 Ala. 48, 20 So. 468, and Taylor v. State, 121 Ala. 24, 25 So. 689, with reference to the giving of the affirmative charge for the state."

In the Scott Case, supra, the court said the giving of this charge "was manifest error. It referred a question to the jury, and then assumed to control their decision. The credibility of the evidence was for the jury." In the Taylor Case, supra, the court held:

"That such charge is of doubtful propriety as against a defendant in a criminal case, and should never be given where there is any evidence upon which a verdict of acquittal could be based, or where the facts in evidence pointing to guilt rest in inference only."

Inferences must be drawn by the jury. These are matters solely for the jury and not for the court. In Nichols v. State, 4 Ala. App. 115, 58 So. 681, this court said:

"The drawing of inferences from the evidence is within the province of the jury and not of the court, and hence, it is error to give the affirmative charge where there are inferences to be drawn from the evidence reasonably, which conflict with the case attempted to be made."

In this case it affirmatively appears from the undisputed evidence as shown by the record, that the first overt act, the first demonstration toward hostilities, on the occasion in question, was committed by the deceased wherein he attempted to shoot state witness Ross, and was prevented in this attempt only by the snapping of his automatic pistol with which he was armed and by its having failed to fire. It is true that the deceased was in his own home at the time. And while it has been held that "a man's home is his castle," yet, even a man's home cannot be turned, by him, into an arsenal for the purpose of offensive effort against the lives of others. It has been said that:

"A man's home is a shelter, but not a sallyport"; and, "if he leaves its shelter, to encounter a danger beyond its precincts. he is in no better attitude, before the law, then if he had come from any other place, and voluntarily entered upon a combat, from the peril of which he was secure but for his own act. It is immaterial that, after he has armed himself, and emerged from his house, he encounters a necessity to kill to save his own life. Such necessity is, in legal contemplation, of his own creation, and he cannot justify under a necessity which his own fault and wrong has contributed to produce." Watkins v. State, 89 Ala. 82, 8 So. 134.

That the evidence in this case was in conflict is clearly manifest from the following statement of facts, contained in "memorandum brief" filed by appellant, which upon examination is substantially borne out by the record:

"The defendant was indicted for murder in the first degree, and charged with the killing of Paul Moore. He was found guilty by the jury of manslaughter in the first degree and sentenced to two years in the penitentiary. At the conclusion of the testimony, the trial court gave the general affirmative charge for the state, the charge being, in substance: 'I charge you, if you believe the evidence in this case beyond a reasonable doubt, you cannot acquit the defendant.' In the oral charge of the court, starting on page 2 of the transcript, and ending on page 5, the jury were instructed to find the defendant guilty of some degree of homicide, the question of the defendant's innocence and of his being the cause of death being eliminated from the jury by the court's oral charge. The correctness of giving the general affirmative charge in this case depends on whether there was any evidence tending to support the doctrine of self-defense or justifiable homicide. There is sufficient evidence in the record to go to the jury that at the time the shot was fired by Mr. McBride, the deceased, Paul Moore, had a pistol in his hand pointed at McBride, and that Paul Moore was standing up at that time trying to work his gun (an automatic pistol). Trying to work his gun is certainly susceptible of meaning trying to shoot his gun. If the killing took place under these circumstances, it is certainly for the jury to say whether or not McBride was in imminent danger, and whether he could have retreated and saved himself from being killed, or whether the safest plan under these circumstances would have been to have shot in order to have preserved his own life. The question that the state insists on is the claim that McBride was not free from fault in bringing on the difficulty. Clayton Ross says, on page 15 of the transcript, that he and McBride went to Paul Moore's house about 9 o'clock in the morning, and that McBride called to Paul Moore and told him that he had 'come after him.' Could this mean that he had come to arrest Paul Moore? (Mrs. Clayton Ross, on page 21 of the transcript, calls McBride 'the sheriff'). On page 17 of the transcript this witness says McBride said something to Paul Moore after McBride went into the room and the house, but he could not tell what it was that McBride said. That he carried McBride to Paul Moore's house for protection. The witness, Perry Ross, says that McBride and Clayton went to Paul Moore's house for the purpose of arresting him, and that Perry Ross went in there to see if they were going to arrest him, and that McBride and Clayton Ross did not go there to kill Paul Moore. E. C. Miley, the jailor, testified that Paul Moore was brought to jail with a wound in his hip. If the purpose of McBride in going to Paul Moore's house was to arrest him, and Paul Moore was informed of this purpose (McBride called to Paul Moore and told him he had come after him), it would be a question for the jury to decide whether or not McBride was free from fault in bringing on the difficulty, as the evidence shows that after this was stated to Paul Moore, Paul Moore snapped his pistol at Clayton Ross and ran around the house and met McBride and tried to work his pistol at Mc-

Bride, or, as the jailor testified on page 23, Paul Moore told him that he took the pistol off the dresser and backed up to the window and jumped out with the pistol in his hand.

"Aside from the question of self-defense, the evidence is sufficient to require a submission to the jury as to whether McBride was justified in shooting to prevent a felony. Killing a person to prevent that person from doing a felony is justifiable under the common law, as well as under the rule established in this state. Suell v. Derricott, 161 Ala. 259, 49 So. 899, 900, 901, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636. It is also settled law in this state that a private individual, as well as an official, has a right to arrest a person for a felony committed in the presence of such private individual. Code, § 3267 says: 'A private person may arrest another for any public offense committed in his presence; or where a felony has been committed, though not in his presence, by the person arrested; or where a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; and an arrest for a felony may be made by a private person on any day and at any time.' The evidence shows that Clayton Ross had no pistol or other weapon, and that, while the witness was outside of the house, 'Paul Moore jumped out of the window and snapped a pistol in witness' face.' McBride, according to the evidence, was evidently in the room and saw this incident. The evidence then shows that McBride went out of the room and out of the back of the house and went around to the side of the house toward the southeast corner, and that Clayton Ross followed right behind McBride, and that Paul Moore met them at the southeast corner and with his pistol pointed at McBride and also at Clayton Ross, who was behind him, attempted to use it, but the pistol did not fire, and, while Paul Moore was attempting to use the pistol, McBride fired the only shot that was fired. Under the law, as stated in Corpus Juris, 30 C. J. § 159, pp. 16, 17, a party may be guilty of assault with intent to murder where the pistol is snapped at another person, although for some reason the pistol fails to fire. The snapping of a deadly weapon in shooting range and aimed at another person, is sufficient for the overt act to constitute the assault. This particular text in Corpus Juris is supported by some Alabama cases there cited.

"On cross-examination the witness, Mrs. Clayton Ross, testified on page 22 of the record 'that her husband pulled him (Paul Moore) from under the house.' On redirect examination the witness was asked: 'In what position was Paul when Mr. McBride shot him?' The state objected to the question and the objection was sustained and an exception was reserved. The position of Paul at the time the shot was fired was an issue in the case, some of the witnesses for the state having testified that Paul was underneath the house when he was shot, some of the witnesses for the defendant having testified that Paul was standing up when he was shot. The latter part of the cross-examination of this witness might indicate that she agreed with the state's witnesses, and the defendant would certainly have a right to show by this witness the position of Paul when he was shot, and that he was standing up, and not under the house. The defendant had already proved by this witness' husband and her brother-in-law that Paul was standing up, and such was the defendant's contention, and we hardly think it incumbent on the defendant to state in so many words that his contention was the same with respect to this witness as it was in connection with the other two witnesses already examined by the defendant. Had this witness been allowed to testify, in answer to this question, that Paul Moore was standing up, a different impression of her testimony would have been gained by the jury, as they could infer from her other testimony that he had been lying down under the house when the shot was fired. This evidence was relevant and material, it called for a fact and not for an opinion, it was descriptive of the conditions existing at the very time that the shot was fired, and should have been admitted in the evidence."

As stated, the facts set out in the above-quoted "memorandum brief" are substantially borne out by the record. The insistences as to the propositions of law contained therein are correct and properly state the law on the questions involved. Moreover, the position of Paul Moore, deceased, at the time the shot was fired was relevant as of the res gestæ. A court has no legal authority to suppress facts clearly of the res gestæ, by adverse rulings. The court therefore erred in sustaining the state's objection to the question propounded to defendant's witness, Mrs. Clayton Ross, wherein she was asked, "In what position was Paul Moore when Mr. McBride shot him?" The objection should have been overruled.

There appears no necessity to here reiterate the constituent elements of self-defense. Freedom from fault in bringing on the difficulty, imminent danger, real or apparent, etc., and a reasonable mode of escape without increasing the danger are all involved; but these are all questions of fact and from the facts in evidence the jury must ascertain whether or not the several stated conditions existed. Where the court, as here, takes the case away from the jury and passes upon the facts, he thereby emasculates and renders nugatory and meaningless the evidentiary presumption of innocence hereinabove discussed. He takes upon himself the unauthorized right of saying from the evidence that the defendant was not free from fault in bringing on the difficulty; he assumes the prerogative of the jury in deciding from the evidence whether or not there existed a necessity to kill; he also decides without the assistance of the jury if or not the evidence disclosed that there was a reasonable mode of escape. The very premise upon which it is evident that the court acted in giving this charge here was in direct conflict, the premise being that the accused was not free from fault in bringing about the difficulty which resulted in the death of deceased. On this question the insistence of defendant that he went to the home of deceased upon a peaceful mission was borne out by his evidence and that of his witnesses, and the inferences to

be drawn from this evidence would tend to show that his insistence was true. If his evidence and that of his witnesses were untrue, and if defendant and his witnesses were unworthy of belief, the court had no right or authority to so hold or declare, as the credibility of witnesses and the weight given to evidence is for the jury, and never for the court.

"The province of the court and jury are distinctly marked, and neither can lawfully invade the other." Dennis v. State, 112 Ala. 64, 20 So. 925.

In the case of Weil v. State, 52 Ala. 22, Brickell, C. J., said of this charge:

"A charge of this kind should be but seldom, if ever, given in any criminal case. It is an invasion of the province of the jury in any case, civil or criminal, unless the evidence is clear, positive, and undisputed."

The affirmative charge should never be given in a case like this, because proof of good character alone is sufficient to generate a reasonable doubt, and "the legal presumption of innocence is to be regarded by the jury, in every case, as matter of evidence." Brickell, C. J., in Newsom v. State, 107 Ala. 133, 139, 18 So. 206, 207. What was said in Newsom's Case, supra, as to the presumption of innocence being evidence for the defendant, and a fact for the consideration of the jury, has been often approved and followed. See Bryant v. State, 116 Ala. 446, 23 So. 40; Amos v. State, 123 Ala. 50, 26 So. 524; Neilson v. State, 146 Ala. 683, 40 So. 221;[1] Bailey v. State, 168 Ala. 4, 53 So. 296, 390.

"The legal presumption of innocence is to be regarded by the jury, in every case, as a matter of evidence, to the benefit of which the accused is entitled." 1 Greenleaf Ev. § 34.

"As a matter of evidence, the presumption of innocence attends the accused until his guilt is, by the evidence, placed beyond a reasonable doubt." Coffin v. U. S., 156 U. S. 432, 15 S. Ct. 394, 39 L. Ed. 481.

In Bailey's Case, supra, the question was decided, and the case was reversed for the refusal of the court to instruct the jury:

"The defendants enter into this trial with a presumption of innocence, and this is a fact in the case which must be considered with the evidence, and should not be disregarded."

Justice Evans, of the court, dissented in that case, holding and contending that, if such be the law, the general affirmative charge could never be given against the defendant. There are in our reports a number of criminal cases in which the trial court gave the affirmative charge against the defendant and the case was affirmed on appeal; but there are many more cases in which the

judgments were reversed on account of the giving of such charges; and we fail to find any case in which the court discussed the question fully, or expressly affirmed or denied the proposition that so directing the verdict denies or impairs the defendant's constitutional right to have a trial by jury. "If the judge's opinion must rule the verdict, the trial by jury would be useless." What constitutes a given crime, when abstractly considered, may be a question of law for the court, but with what intent a given act was committed is a question of fact for the jury, and not one of law for the court. The several degrees of homicide charged or comprehended in the indictment involve the question of intent; and the offense for which appellant was convicted must have been shown by the evidence to have been intentionally committed. On this question, the above-discussed presumption of innocence, being evidentiary, coupled with the conflict in the evidence, made a jury question and precluded the trial judge of the right to pass upon the guilt or innocence of this defendant and this right he erroneously assumed by giving the charge in question.

A reading of this record will show that the evidence upon the part of defendant (if not ignored by the lower court and the majority here) was given but slight consideration. My opinion is that the appellant's substantial rights were not subserved, and that he has not been accorded the fair and impartial trial by jury which the law contemplates.

The judgment of conviction from which this appeal was taken should be reversed, and the cause remanded for proper trial.

---

[1] Reported in full, with opinion, in the Southern Reporter; not reported in full in Alabama Reports.