27 So.2d 508

SPARKS v. STATE.

7 Div. 867.

Court of Appeals of Alabama.

June 4, 1946.

Rehearing Denied June 25, 1946.

Leonard Crawford, of Fort Payne, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the state.

HARWOOD, Judge.

The appellant was indicted for murder in the first degree. He was found guilty by a jury of murder in the second degree and sentenced to imprisonment in the penitentiary for a term of ten years.

According to Logan Pate, he, Pip Heard, Russell Carr, M. Lankford, and the deceased, John Mitchell, had started for Jasper, Tennessee, to a cock fight on Sunday, 16 April 1944. They changed their plans concerning the cock fight and instead drove to Sam Poe's house. Here they met the appellant Sparks and Charlie Evett. A dice game blossomed spontaneously, and the bottle of whiskey, inevitable it seems on such occasions, soon appeared. Just who drank and who abstained cannot be clearly determined. We gather that deceased was the winner in this game. The appellant and Evett left in appellant's automobile. Later the deceased and his companions mentioned above left in their car. As they reached Smith's Gap, travelling toward Ft. Payne, they met appellant and Evett in appellant's car, but with Evett driving, going in the opposite direction.

According to Pate, the State's chief witness, appellant and Evett yelled at them and blew the car horn, and threw up their hands. Deceased threw up his hand in reply. Appellant's car went past them about a quarter of a mile, turned and overtook the car of the deceased and his companions, who stopped their car after more signals from the following car. Appellant's car pulled to the side of the other car and appellant asked if they wanted to shoot more craps. The deceased replied they did not, to which appellant replied: "It is a good thing, by God, I have got the difference." When deceased asked appellant what he meant appellant told him: "Get out and I will show you." When deceased opened his door to get out Evett pulled his car up to a position blocking the other car, and appellant fired two shots, one hitting the fender, and the other the door, of the blocked car. Deceased it appearing

had stepped up on a roadside bank during this time. Appellant's car then was driven about a hundred yards down the road and stopped. Appellant alighted and fired three more times, hitting deceased with the second shot fired from the new position. Deceased at the time he was struck by the bullet was running toward a pine tree on the opposite side of the road.

The testimony of Russell Carr tended in general to corroborate Pate's account of the shooting, though Carr's testimony was vague on many points and he admitted in answer to the question if he was not so drunk on this occasion that he did not remember much about it that, "I was pretty well lubricated."

The testimony of appellant and his companion Evett concerning the shooting is in complete conflict with the version given by the State's witnesses. According to these two, testifying for the defense, they turned their car after passing deceased's car only after deceased's group had indicated by yells and signals that they wanted to see them. When they drove back and stopped by the side of deceased's car appellant inquired what the group wanted. Deceased jumped out of his car, a knife in his hand, stating he was going to cut appellant's guts out. Appellant alighted from his car, the open door blocking the way toward the rear because of its proximity to deceased's car. Deceased advanced on appellant from toward the front of his car, and appellant fired first when deceased was about six feet from him, and continued firing as deceased advanced on him, the sixth and last shot hitting deceased when he was about two feet from appellant.

A number of witnesses testified that appellant's reputation was good, and that deceased's reputation for peace and quietude was bad when deceased was drinking.

There was also testimony by several witnesses that State's witness Logan Pate's reputation for truth and veracity was bad.

■ We have examined the court's rulings on objections interposed to certain questions. The court's action in sustaining the objection to the question by appellant's counsel to the State's witness Pate inquiring if he had been in jail was correct.

While a witness' credibility may be attacked by showing his conviction of a crime involving moral turpitude (see Ala. Dig., Witnesses, ⊕345(1)), a question to the effect has witness been in jail is faulty as being too general. Harwell v. State, 11 Ala.App. 188, 65 So. 702. In fact the question is so general that an answer would be meaningless.

■ The court's action in overruling objection to question propounded to appellant on cross examination as to what he was doing with a gun on the day of the shooting constitutes no reversible error, and was well within the discretion of the court's determination of the scope and extent of permissible cross examination. Sanders v. State, 243 Ala. 691, 11 So.2d 740; Coates v. State, 27 Ala.App. 213, 169 So. 328. The case of Smith v. State, 25 Ala.App. 79, 141 So. 265, relied on by appellant in arguing that overruling objection to above question was prejudicial is not in point, in that in the Smith case the questions condemned concerned accused's carrying a pistol on the occasions wholly disconnected with the offense for which he was being tried and after accused had admitted he had a pistol at the time complained of.

■ Appellant's contention that the court erred in overruling his objection to the question propounded to defendant's witness Evett if he were not under indictment for the same offense is utterly without merit. A witness may properly be asked on cross examination if he is not under indictment for the same offense as the defendant, interest and bias possibly being present under such situation. Titus v. State, 117 Ala. 16, 23 So. 77; Houston v. State, 203 Ala. 261, 82 So. 503; White v. State, 12 Ala. 160, 68 So. 521; Coplon v. State, 15 Ala.App. 331, 73 So. 225.

■ The remaining rulings by the court on the admission of evidence present nothing for review in that either the question was answered despite objections thereto and before a ruling by the court, with no motion to exclude, or if the objection was sustained to appellant's question no exception was reserved to the court's ruling.

■ Nine written charges requested by appellant were refused by the court below.

These charges have been examined with care and we are of the opinion that each of these charges was either faulty in failing to include all essential elements of the legal principles sought to be given the jury by such charges, or they were fully covered by the very adequate oral charge of the able trial judge or other written charges which were given at the request of appellant. It is clear to us that no reversal should be posited on this phase of the case.

■ During his argument to the jury one of the prosecuting attorneys made the following statement:

"That brother" (of deceased) "sitting over there * * * if he didn't think the jury would do their duty he would walk over there and shoot him like the rat he is."

Appellant's objection to this argument was sustained, and the court at appellant's request charged the jury that the objectionable statement was not to be considered as in evidence, and that the jury should let same "go out of your minds." Appellant thereafter moved that the jury be discharged because of the prejudice possibly engendered, and that appellant be granted a new trial. The court overruled this motion to which action of the court appellant excepted.

The above remarks were of course beyond the limits of forensic propriety. The action of the trial judge in sustaining the appellant's objection, and in instructing the jury that such remarks should be put out of their minds, did, in our opinion sufficiently dilute the prejudicial effect of such remarks to the extent that to now say any harm resulted to appellant from same would necessitate a heavy resort to surmise and conjecture.

The light sentence imposed by the jury on appellant in view of their finding him guilty of murder in the second degree, we think indicates that any prejudice that might have been generated by the improper remarks was in fact eradicated by the court's action in the premises.

In our opinion the record is free of error materially affecting the substantial rights of appellant, and an affirmance is in order.

Affirmed.