178 So.2d 520

**Roosevelt HOWARD**

v.

**STATE of Alabama.**

**3 Div. 162.**

Supreme Court of Alabama.

June 30, 1965.

Rehearing Denied Sept. 30, 1965.

Solomon S. Seay, Jr., Montgomery, for appellant.

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

MERRILL, Justice.

This appeal is from a death sentence after a conviction of murder in the first degree; and comes to this court under the Automatic Appeal Statute, approved June 24, 1943, and listed as Tit. 15, § 382(1)– 382(13), 1958 Recompilation.

This is the second appeal in this case. Appellant appealed the death sentence in his first trial and we affirmed, Howard v. State, 273 Ala. 544, 142 So.2d 685. Later, he filed application for leave to file a writ of error coram nobis, the chief reason being the alleged systematic exclusion of Negroes from grand and petit juries in Butler County. The State concurred in the request to grant leave, and it was so ordered in Ex parte Howard, 275 Ala. 449, 155 So.2d 927 (1963). The trial court heard the matter in January, 1964, and set aside the judgment of conviction and the sentence, held the indictment to be void, and ordered appellant held in jail until another grand jury could consider the charge against him.

Appellant was reindicted, and, attended by his retained counsel, was arraigned in open court, where he pleaded not guilty and not guilty by reason of insanity.

Appellant had filed a motion for change of venue, a motion for the appointment of a lunacy commission and a motion to quash the indictment, all of which were overruled.

The motion for a change of venue was properly overruled. The evidence did not support the motion and the trial court would have erred had the motion been granted.

The testimony in support of the motion for the appointment of a lunacy commission in no way indicated that appellant was of unsound mind either when the crime for which he was convicted was committed or at his trial. The great preponderance of the evidence was that he was sane.

Moreover, the court is under no duty to appoint a lunacy commission or to procure a report of the Superintendent of the Alabama State Hospital under Tit. 15, § 425, Code 1940. The court has simply the right to seek these aids for advisory purposes when the court, in its discretion, thinks such aids will be helpful. Campbell v. State, 257 Ala. 322, 58 So.2d 623; Oliver v. State, 232 Ala. 5, 166 So. 615.

Considerable testimony was presented on the motion to quash the indictment, and by stipulation, that same evidence was the basis for submission on motions of appellant to quash the venire and the motion to declare void the composition of the jury.

In Swain v. State, 275 Ala. 508, 156 So. 2d 368, we said:

"It is well-settled that a defendant in a criminal case is denied the equal protection of the law, as guaranteed by the Fourteenth Amendment to the United States Constitution, if he is indicted by a grand jury, or tried by a petit jury, from which members of his race have been excluded because of their race. [Citing cases]. 'Excluded,' in the context of the stated principle, means a systematic, purposeful non-inclusion based solely on race. Cassell v. [State of] Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839. This is not to imply that every grand and petit jury must contain members of the accused's own race. The accused has no right to have his race represented on the jury. [Citing cases]. Fairness in selection has never been held to require a proportional representation of races on a jury. In fact, a proportional limitation or representation, as such, is forbidden. [Citing cases] * * *

"The burden of proving discrimination is on the defendant. It is not to be presumed. [Citing cases]. However, once a defendant establishes a prima facie case of discrimination, the burden is then upon the state to refute it. [Citing cases]. A prima facie case may be established by showing an unexplained absence from grand or petit jury service for a long period of time [Citing cases], or by statements of the jury commissioners that they listed no Negroes on the jury rolls, or they knew of no eligible Negroes in an area composed of a large proportion of Negroes (Cassell v. [State of] Texas,

supra; Hill v. [State of] Texas [316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559]), or where a 'marking' system is used to differentiate Negro names from white names on jury rolls or on cards used in the jury box. Avery v. [State of] Georgia [345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244]. Each case must, of course, be determined from its own particular facts, with due regard for the principles set forth in the cases."

This case was affirmed in Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

The evidence on the motion to quash the indictment showed that 1455 names were in the jury box of Butler County, which has a male population, 21 years of age and above, of 6,053. This means that 24% of those old enough for jury duty were in the jury box.

Grand jury lists from 1961 to 1964 were introduced, showing that persons known to be Negroes had been on 28% of the grand jury lists. Petit jury lists from 1961 to 1964 showed that persons known to be Negroes appeared on all but one of the venires. On one petit jury, all 12 members were Negroes.

Since the year 1960, there have been no means by which a prospective juror could be denoted as to his race and this accounts for the term "known member of the Negro race." Each list above was examined by the testifying witness and the number of persons said to be Negroes was based only upon his personal knowledge. Of the 16 lists, the names of known Negroes appear on 15 for a percentage of 93. This figure indicates no systematic exclusion in relation to the percentage of Negroes (known Negroes) whose names were in the jury box. Testimony was elicited that of the 1455 names in the jury box, 196 were known to be Negroes. This is a known percentage of 14 plus. The record also shows that at least 6 members of the appellant's race were on a list of 75 names

from which the grand jury that indicted him was selected. This is 8% of the total names on that list. The percentages that have been listed include venires beginning in the year 1961. In January, 1964, the trial court found the venires from 1961 to 1964 insufficient. The evidence shows without dispute that the names of many more Negroes had been added to the jury roll prior to the drawing of the grand and petit juries for this case.

■ In addition to these figures and percentages, the testimony of the jury commissioners for Butler County was not indicative of any design to exclude Negroes from the jury roll, but to the contrary. Each testified that he had never refused to place the names of qualified Negroes in the box and various means of procuring additional names were testified to. Appellant offered no testimony to refute these claims nor was there evidence to prove systematic exclusion. The U. S. Supreme Court has said in the Swain case, supra, "* * * purposeful discrimination may not be assumed or merely asserted. * * * It must be proven, * * *." The evidence fails to make out a prima facie case and the trial court did not err in its rulings in these matters. We think the Swain case, supra, supports the overruling of the motions.

On the oral motion of the State, the judge struck paragraph eight of the motion to quash the indictment. This paragraph raised in issue the constitutional competency of the judicial officials of Butler County to try the appellant in that members of the Negro race had been denied the right to vote and the exercise of this power would deprive the defendant of due process of law and the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. Appellant argues that the granting of the State's oral motion to strike was error.

■ The three cases cited by appellant do not support his claim of error. While they do hold that motions to strike *should*

be in writing, it is not mandatory, and "the fact that the State's motion to strike was oral should not work a reversal of this cause if in fact the grounds of the motion to quash the indictment which were stricken were without merit." Aaron v. State, 271 Ala. 70, 122 So.2d 360; W. L. Weller & Sons v. Rensford, 185 Ala. 333, 64 So. 366; Southern R. Co. v. Penny, 22 Ala.App. 199, 114 So. 15.

■ There was no merit in the contention that because Negroes had not voted on the court officials that they were not qualified to try him. If that were the law, no state could ever legally convict a nonresident who violated the laws of that state because the accused had not participated in the election at which the officials were elected.

■ The evidence offered by the State in this case, although circumstantial, was convincing beyond any doubt that the appellant was the person who killed Vandiver Lazenby. Briefly stated, Lazenby was shot in the back and killed as he sat in the office of a store operated by him in Butler County, Alabama, between the hours of 2:00 and 3:00 P.M. on January 9, 1960. The appellant and the deceased had argued earlier on that day about the amount of credit that the appellant could receive. Witnesses testified that the appellant left the store with them after the argument. These same witnesses testified they later encountered the appellant on the road leading toward Lazenby's store with a .22 rifle and asked him to return home. During this encounter, the rifle was discharged and one of the witnesses was struck by the bullet. The appellant told the witnesses to leave him alone and proceeded on toward Lazenby's store. A short time later, a shot from the direction of the store was heard. J. R. Callins, a clerk in the store, testified that when he heard the shot, he entered the office and found Lazenby attempting to get up from his chair. He went to a window in the rear of the office and saw the appellant running away from the rear of the store. Another witness testified

she had seen the appellant go behind the store with a rifle, and then a second afterwards heard a shot. She did not know the appellant's name, but she did identify him as the same person she had earlier seen leave the store in the company of two other colored boys. These two boys had identified the appellant as the person who had left the store with them. No evidence was presented by the defense to rebut the State's evidence or to in any way discredit it.

The only evidence taken on the motion for a new trial related to ground six of the motion which charged error in the denying of appellant's motion to desegregate the courtroom during the trial. The only evidence in support of the charge that any segregation of the races was practiced was that the sheriff asked three Negro boys to move from one side of the courtroom to the other.

After the noon recess on the first day of the trial, before the judge or the jury had returned to the courtroom, and before the jurors not selected to try this case had been excused, the sheriff asked the three boys to move from the crowded side to the less crowded side and, after a protest, they complied with his request. When the afternoon session of the trial was begun, the trial court dismissed all the jurors not sitting on the case and instructed them that they could go to the clerk's office to be paid. When they left, most of their seats were occupied by spectators, mostly Negroes, who had been standing. At that time and throughout the trial, Negroes sat on both sides of the center aisle of the courtroom and no segregation of the races was compelled, forced or observed. A majority of the spectators throughout the trial were Negroes and they sat where they pleased in the courtroom.

The same three boys came to the courtroom the next day, sat in the same seats they had been asked to vacate the day before and remained there during part of the morning session while the trial was in progress.

When the motion to desegregate the courtroom was made, the trial court, Honorable Werth Thagard, made the following statement to all within the courtroom:

"Let the record show that I have been Judge of this Court for some 12 odd years and that for a period of at least five years and perhaps seven or eight years there have been no signs inside the courtroom and no symbols and nothing to indicate any policy of segregation in this courtroom. Le(t) the record further show that for at least five to eight years no officer in the presence of myself, the trial Judge here, has undertaken to enforce any policy of segregation, nor has this Court undertaken, within five to eight years, undertaken to enforce any policy of segregation in this courtroom, and that such actual segregation as may have existed has apparently been the result of voluntary segregation on the part of the members of the races, rather than because of any requirement on the part of the Court or any effort on the part of the officers of this Court to enforce the policy of segregation. * * *"

■ We hold that the trial court correctly denied the motion because there was no involuntary segregation of the races being enforced in the courtroom during the trial.

■ We are not to be understood as holding that it is illegal to ask persons in a courtroom to vacate their seats temporarily while a jury is being qualified and selected. We judicially know that many trial judges desire that jurors summoned for the week sit in a body while they take the oath and are being qualified. At that time it may be necessary for parties, witnesses and spectators to move temporarily in order that the venire may sit together. Asking anyone in the courtroom to move or vacate their seat under such circumstances would not be compelled segregation. On the other hand, there cannot be sections reserved

for any persons when race is the basis of the reservation.

The Federal Supreme Court has said that it is no longer open to question that a State may not constitutionally require segregation of public facilities; and State-compelled segregation in a court of justice is a manifest violation of the State's duty to deny no one the equal protection of its laws. Johnson v. State of Virginia, 373 U.S. 61, 83 S.Ct. 1053, 10 L.Ed.2d 195.

We have discussed some questions not called to our attention because it is our duty, in cases of this character, to examine the record for reversible error. We have dealt with all questions calling for discussion. We find no reversible error in the record and the judgment is due to be, and is, affirmed.

Affirmed.

All the Justices concur.