262 So.2d 622

**Jimmy LAMBERTH, alias**

v.

**STATE.**

**5 Div. 46.**

Court of Criminal Appeals of Alabama.

April 18, 1972.

Rehearing Denied May 16, 1972.

H. Gerald Reynolds and Sam H. Bradshaw, III, Alexander City, for appellant.

**135**

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

TYSON, Judge.

Appellant, Jimmy Lamberth, was indicted for robbery. Verdict and judgment resulted in sentence of ten years imprisonment.

The State's evidence showed one Juanita Gunn Still was the owner and operator of Still's Army Surplus Store in Tallapoosa County, Alabama. Mrs. Still testified that on the morning of June 2, 1970, the appellant came into the store armed with a shotgun and stated to her, "This is a holdup, give me your money." She testified that she opened the cash register, and the appellant stated, "Put the money in a sack." She then was told to lie on the floor and her hands were tied. The appellant went into her purse and took the money from her billfold. Then the appellant pulled the telephone from the wall and took a pistol, holster and a thirty-ought six rifle. In looking through Mrs. Still's purse, he asked her, "Which one of these keys is to your car," and stated to her, "I am going to go in your car and leave mine." She further testified that appellant said, "You lay there until. I get out." Mrs. Still then requested that she be allowed to get some things from her car, and the appellant let her come outside. She tried to motion to a passing car and he told her, "You had better watch it, I am armed and I've got plenty of ammunition." The appellant then left in Mrs. Still's Ford LTD automobile, which was only one week old, having also taken $198 in paper currency, the rifle, and a pistol.

Police Officer Lynn Royal of Alexander City Police Department testified that he had information of the missing car and its description and found it near the Davis Road, which is off the Dadeville Highway; that he notified other officers and saw Sheriff's Deputy Eugene Huff in the wooded area where the car was found. He also testified that he went to Mrs. Still's store and found the appellant's Mustang Ford automobile there.

Deputy Sheriff Eugene Huff testified that he went to the site off the Davis Road where Mrs. Still's automobile was found and searched the wooded area nearby. He testified that he found a thirty-ought six rifle, a sixteen gauge pump shotgun, a twenty-two caliber pistol and holster, and a gun belt.

He testified that the shotgun was not loaded when he found it and that he did not find any ammunition at the time and place.

Chief of Police Winfred Patterson then identified the weapons as having been in his possession and custody since June 2, 1970, when they were delivered to him.

Appellant presented testimony of his half sister, Mrs. Virginia Waldrop, who stated that she had been reared in the same household with the appellant, and that the appellant had twice been sent to Bryce Hospital as a patient during his childhood years. Mrs. Waldrop also told of several instances in which the appellant had demonstrated hostile or unusual behavior before his family and friends. She further testified that after the appellant's father died the appellant's behavior had been worse and that in her opinion the appellant was insane.

Appellant then presented the testimony of Glinston Waldrop, husband of the appellant's half sister, and he told of two instances when the appellant had come to his home and thrown rocks at his wife and children. He further testified that in his judgment the appellant was insane.

Appellant offered the testimony of Mrs. Pearl Lamberth, who stated that the appellant was her son's stepson. She testified that the appellant's mother had been in Bryce for the past fifteen years. She further described several instances of irrational behavior by the appellant and stated that in her opinion "He always acted insane to me."

Appellant offered the testimony of his mother-in-law, Mrs. Flora J. Smith, who told of two instances when appellant struck his wife and six weeks old baby son. She testified that his mind had not been good and that since his father died the appellant had been most irrational. She further stated in her opinion the appellant was insane.

The appellant then offered the testimony of his wife, who testified that the appellant's mother and one of his sisters were both in Bryce Hospital, and stated that in her opinion "He hasn't got a right mind, that he is insane if you ask me." She stated that she had stood by him through his beatings and was sticking with him now.

The defense then offered on the issue of the insanity the statement given to Officer Herman Chapman of the State Department of Public Safety by appellant, which covered the robbery of Still's Army Surplus Store on June 2, 1970. He admitted that he had gone there with a sixteen gauge shotgun which he had taken from the home of his uncle, Bill Lamberth, in Goodwater, Alabama, the night before. He admitted taking the rifle, a twenty-two caliber pistol and holster, and the money from Mrs. Still's purse, and leaving in a 1970 Ford LTD automobile which belonged to Mrs. Still.

The appellant took the stand in his own behalf and affirmed the details of his statement. He also advised the jury of three or four instances in which he had attempted to commit suicide, by cutting his wrists and by stabbing himself in the stomach.

Appellant was represented at trial by two attorneys from the Tallapoosa County Bar who had been appointed to represent him on July 27, 1970, and at that time had entered pleas of not guilty and not guilty by reason of insanity in behalf of the appellant. Able counsel raise three contentions concerning the appellant's trial.

I

■ Appellant's counsel argue that appellant did not have a preliminary hearing or counsel at his preliminary hearing. His arraignment occurred on July 27, 1970, and trial was held one week later on August 4, 1970. Appellant's attorneys concede that the date of preliminary hearing at which the appellant waived same and was bound over to the Grand Jury of Tallapoosa County, took place prior to June 22, 1970. The indictment was returned by the Grand Jury of Tallapoosa County on July 23, 1970.

Appellant's attorneys cite us to Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, on the question of counsel at preliminary hearing, where, as here, the party is indigent. In Adams v. Illinois, dated March 6, 1972, the Supreme Court of the United States held that its opinion in Coleman v. Alabama, supra, does not apply retroactively to preliminary hearings conducted before June 22, 1970, the date of the *Coleman* opinion. 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202.

## II

■ The appellant's attorneys had filed at trial date, August 4, 1970, a motion asking the trial court to send the appellant to the State mental hospital, Bryce at Tuscaloosa, for psychiatric examination, pointing out that the appellant was indigent and that there were no psychiatrists practicing in Tallapoosa County. This motion was denied on the morning of trial just before its inception. This ruling is cited as error.

In referring to Title 15, Sections 425 and 426, Code of Alabama 1940, as recompiled 1958, the Supreme Court of Alabama in speaking to this question in Seibold v. State, 287 Ala. 549, 253 So.2d 302, stated as follows:

"Also, under Section 425, supra, the court is under no duty to appoint a lunacy commission or to procure the report of the Superintendent of the Alabama State Hospitals; the court, *in its discretion*, has simply the right to seek these aids when such reports may be deemed helpful. Howard v. State, 278 Ala. 361, 178 So.2d 520; Divine v. State, 279 Ala. 291, 184 So.2d 628. The question of the appointment of medical specialists in mental disorders in response to a motion is solely within the discretion of the trial court. Coon v. State, 278 Ala. 581, 179 So.2d 710; Tiner v. State, 279 Ala. 126, 182 So.2d 859.

"The 'Second Motion for Investigation of Sanity of Defendant' was filed pursuant to the provisions of Section 426, supra,

which, in pertinent part, provides as follows:

" '§ 426. *Inquisition in certain cases of felony; proceedings.*—If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct. If the jury shall find the accused sane at the time of their verdict, they shall make no other inquiry, and the trial in chief shall proceed. If they find that he is insane at that time, the court shall make an order committing him to the Alabama state hospitals, where he must remain until he is restored to his right mind. * *'

"Under Section 426, supra, it is within the discretion of the trial court to grant or refuse a motion to execute an inquisition as to the mental status of the defendant at the time of trial. Granberry v. State, 184 Ala. 5, 63 So. 975; Burns v. State, 246 Ala. 135, 19 So.2d 450. Furthermore, the refusal of the trial court to suspend the trial and submit to a jury an inquisition as to the defendant's sanity under the provisions of this section at the time of trial is not revisable on appeal. Rohn v. State, 186 Ala. 5, 65 So. 42; Whitfield v. State, 236 Ala. 312, 182 So. 42."

Under the above case we are of the opinion that the able trial judge correctly denied this motion.

## III

Appellant's attorneys had also filed a motion on the morning of the trial, August 4, 1970, asking for a continuance, citing their motion requesting psychiatric examination; that they had additionally been appointed in sixteen other cases, two of which were capital, and that they needed additional time in which to prepare appel-

lant's case for trial. Insofar as the record on appeal is concerned, this motion, like that for psychiatric examination, was presented for the first time to the trial judge on the morning of trial.

■ The Supreme Court of the United States in Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377, affirmed a decision by the Supreme Court of Alabama that the denial or granting of a continuance is a matter within the sound discretion of the trial judge.

More recently, the Supreme Court of the United States in Ungar v. Sarafite, Judge, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, stated:

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . ."

■ Our court has determined that where, as here, the attorneys who were appointed were experienced; that they cross-examined all witnesses for the State; objected to the introduction of immaterial evidence; struck the jury with due care; presented all available defense witnesses; and made opening and closing argument; that we cannot say the trial court abused its discretion in not granting a continuance to allow appointed counsel additional time to prepare for trial. Here, seven days after arraignment the cause was set for trial. No motions were presented to the trial court during this time. This court is judicially aware that there are only a limited number of attorneys practicing in Tallapoosa County, and in this situation the trial court is in a much better position to determine whether or not a continuance should be granted in a particular case, based upon the availability of all witnesses, whether or not various additional cases may have been settled or continued; hence, we do not believe that an abuse of the trial court's discretion in this respect has been here shown. Walker v. State, 265 Ala. 233, 90 So.2d 221; White v. State, 44 Ala.App. 312, 208 So.2d 222; Burton v. State, 43 Ala.App. 249, 187 So.2d 808.

We have carefully examined the entire record in accordance with Title 15, Section 389, Code of Alabama 1940, as recompiled 1958, and find no error therein. The judgment of conviction is therefore due to be and the same is hereby affirmed.

Affirmed.

PRICE, P. J., and CATES and ALMON, JJ., concur.