318 So.2d 793

**Karen Elaine JORDAN, alias**

v.

**STATE.**

5 Div. 141.

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

Rehearing Denied Nov. 12, 1974.

**56**

Richard D. Lane, Auburn, for appellant.

William J. Baxley, Atty. Gen., and Kent Brunson, Asst. Atty. Gen., for the State.

PER CURIAM.

This is a companion case of *Connell v. State,* 56 Ala.App. ——, 318 So.2d 782. · which was reversed and remanded by this court on May 7, 1974. This opinion is subject to review by the Supreme Court.

This instant appellant-defendant was indicted, along with *Connell* and two others, in separate indictments, for murdering Burt Michael Froney. The jury convicted her of murder in the second degree, which was implied in the charge of murder in the first degree. The jury fixed her punishment at imprisonment for life.

Our statement of facts in *Connell* leading up to the alleged homicide, at the time thereof, and subsequent thereto, is substantially the same as the record presents in the instant case. We adopt this statement for the purposes of this opinion.

Many of the legal issues in *Connell* and here are in many respects the same. Here, the trial court did not refuse cross examination of Mrs. Froney with respect to an oral statement she gave some officers, which was tape recorded and transcribed, but not signed. The trial court in *Connell* refused to permit the defendant to cross examine about the taped statement. Such question did not arise in the instant case. We will advert to the legal issues here which appellant asserts as error. She was represented · by appointed counsel during the trial and is represented on this appeal by the same appointed counsel. She was then and is now an indigent.

## MOTIONS

We will first take up pre-trial motions that were filed and heard before the trial and overruled.

## INVESTIGATION OF SANITY

We construe appellant's contention in her counsel's brief that she was insane at the time the alleged offense was committed and at the time of trial; that she was entitled to an inquisition to determine her mental condition; that such inquisition was authorized, so the appellant contends, by §§ 425, 426, and 428 of Title 15, Code of Alabama 1940. The motion for such sanity investigation was supported by some affidavits with respect to which we will omit details. The evidence presented on the question of insanity is not comparable with that in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and is not sufficient to raise a "bona fide doubt" as to appellant's sanity and her mental competence to stand trial.

The trial court under the evidence did not err in denying appellant's motion to appoint three reputable specialists-practitioners in mental and nervous diseases to examine her. The trial court was under no duty to appoint a lunacy commission or to procure a report of the superintendent of Alabama state hospitals under provisions of § 425, supra. The court has the right but not the duty to seek these aids for advisory purposes when, in the discretion of the .court, aid will be helpful. *Eaton v. State,* 280 Ala. 659, 197 So.2d 761; *Howard v. State,* 278 Ala. 361, 178 So.2d 520. The affidavits filed in support of the position do not, in our judgment, support such appointments or procedure.

We note that the trial court in its oral charge instructed the jury that, if they believed the evidence, they could not find the appellant not guilty by reason of insanity. The appellant did not except or object to this instruction.

We also note that on the trial of the issues of not guilty, the state introduced in evidence (Tr. 354) appellant's undisputed statement (Appellant did not testify) made in the presence of Officers Ronnie Watkins, et. al, on February 2, 1972, wherein she related in detail events before, at the time of,

and after the commission of the homicide. The statement largely comports with the testimony of Mrs. Froney and some of the other witnesses for the state. A few crucial details that implicated the appellant were absent. Appellant's statement indicated lucidity at that time.

The statement, although not decisive, downgrades or casts a shadow on appellant's contention of insanity when the crime was committed and at the time of trial. In other words, it appears from this statement that the appellant was not suffering from any mental disturbance. The action of the court in overruling the motion was free of error.

## MOTION FOR PRELIMINARY HEARING

It appears that the Alabama warrant for the arrest of the appellant was issued by Judge Tyner, who was a trial judge in the nisi prius court where the appellant was convicted and from the judgment of conviction she here appeals.

Motion for preliminary hearing was filed before the indictment on March 22, 1972. It was presented to the court after the indictment was returned. The trial court, as the record indicates, had a full schedule of official work. The court overruled the motion for preliminary. This ruling occurred after the indictment was returned (Tr. 117).

"A person accused by an indictment is not entitled to a hearing in advance of trial. This for the reason that there is no constitutional requirement, either federal or state, that there be two inquiries into probable cause. A sovereignty having once satisfied the provision for an inquiry as to probable cause by presenting the matter to a grand jury and obtaining an adjudication of the existence of probable cause, is entitled to bring the accused to trial without further litigation of this question. See *United States ex rel. Kassin v. Mulligan,* 295 U.S. 396, 55

S.Ct. 781, 79 L.Ed. 1501; *Beavers v. Henkel,* 194 U.S. 73, 24 S.Ct. 605, 48 L. Ed. 882. No merit therefore attaches to petitioner's contention that he was denied any constitutional right by not having been accorded a preliminary hearing." *Ex parte Campbell,* 278 Ala. 114, 176 So.2d 242, at page 243.

The court did not commit error in overruling the motion for a preliminary hearing.

## MOTION TO PRODUCE

■ Appellant contends that she was unlawfully denied her constitutional right to see or inspect a statement that she made to federal authorities, which the state acknowledged the appellant made.

Our search of the record fails to reveal to us any evidence that such statement was made or that the state had knowledge of such statement; nor do we find that such statement was in the possession, custody and control of the Lee County Sheriff's Office. No such statement was introduced in evidence or offered in evidence by the state that we are able to find.

Besides, we think the motion to produce lacked specificity and was too broadsweeping and general to meet the requirements of law. *McCants v. State,* 282 Ala. 397, 211 So.2d 877; *Smith v. State,* 282 Ala. 268, 210 So.2d 826; *Sanders v. State,* 278 Ala. 453, 179 So.2d 35.

## MOTION FOR CHANGE OF VENUE

■ Appellant moved the court for a change of venue due to the extensive publicity in the news media of Lee County, and also appearing in the news media of other counties. News items appearing in various newspapers concerning the homicide were introduced in evidence. Also broadcasters over the air news media testified. It appears that there was considerable publicity prior to the trial concerning the crime.

The newspaper articles gave prominent space about the alleged offense and the arrests of the four alleged defendants who were indicted. These items did not carry any editorial implications that the suspected murderers were guilty of the crime. So far as the record shows, the television and radio accounts of the crime and the arrests of the defendants were free of such implications of guilt. They were just news items carrying usual publicity in prominent spaces about the nature of the crime and the arrests of the defendants.

■ On a motion for a change of venue in a criminal case, the defendant has the burden of showing to reasonable satisfaction of the court that a fair and impartial trial cannot be had and an unbiased verdict cannot reasonably be expected. *Tiner v. State,* 271 Ala. 254, 122 So.2d 738.

■ The trial judge was a resident of Lee County and was in a position to evaluate conditions and sentiments in his own county. *Donald v. Matheny,* 276 Ala. 52, 158 So.2d 909(14); *Edwards v. State,* 51 Ala.App. 433, 286 So.2d 308, cert. den., 291 Ala. 777, 286 So.2d 313.

A change of venue was unnecessary. The trial was had before a competent jury who, according to our examination, were free of any prejudice created by the news media or otherwise. They returned a verdict of murder in the second degree when the indictment charged murder in the first degree.

## MOTION FOR CONTINUANCE

■ Defendant on the day of the trial moved the court for a continuance on the ground that the defendant was being tried subsequent to two of her co-defendants, who were tried and convicted. Accounts of these trials and the results were given coverage in the newspapers.

■ The trial court has discretion on the question of continuance or postponement, and such discretion will not be revised in the absence of clear abuse of discretion. *Logan v. State,* 251 Ala. 441, 37

So.2d 753. Abuse of discretion is not here shown. We will not charge the court with error in its refusal to continue the case.

## ON THE MERITS

### I.

It appears in the record that the appellant submitted to the trial court for its consideration a series of seventy or more questions to be asked the venire concerning their qualifications, interests, or bias in the trial of the defendant.

Defendant complains in her argument that the court erred in striking from the list questions 29 and 57, which appear in the defendant's brief. We quote:

"29. Do you feel that you know too much about this case, from the pretrial publicity that has surrounded it, that you feel you should be disqualified from the case? 29. Do you think it might confuse your judgment if you sit on a jury in this case and not all of what you have heard, read, or learned about the case actually comes out in court in a manner different from what you may have heard?

"57. Have any of you sat on a grand jury in this circuit within the past two years? If so: who?"

With respect to question twenty-nine, we have examined the transcript and find that the trial court in qualifying the jury fully covered the import of this question (See Tr. 144–145). We will not burden this opinion by quoting the court's inquiry of the jury.

Question fifty-seven was properly stricken from the list. The trial court asked the jurors if any one of them was on the grand jury that returned the indictment. This inquiry met the demands of law.

The above contention of error is without merit.

### II.

Deputy Sheriff Ronnie Watkins testified that on February 25, 1972, he in the presence of another, talked with the defendant at which time she signed and gave him a written statement with respect to the homicide and incidents relating thereto.

It appears that before signing the statement he orally advised the defendant of her Miranda warnings. We quote the testimony of the witness (Tr. 334–335):

"Q. Now, what rights did you advise her of, at that time?

"A. I advised the defendant that she had a right to remain silent; that anything that she might say could be used in a Court of law against her; that she had a right to a lawyer or counsel; and the right to have a lawyer or counsel present if and when she did make a statement; that any time during the questioning that she wished to stop answering questions, she had a right to do so; if she did not have the money to employ an attorney, the State of Alabama or the Court would appoint one to represent her. I asked her did she understand her constitutional rights and she told me that she did.

"Q. Did you—

"THE COURT: State whether or not you told her that she could have a lawyer at any time during the questioning?

"THE WITNESS: Yes, sir, I did.

"THE COURT: All right.

"Q. State whether or not you said a lawyer would be furnished her free of charge?

"A. Yes, sir, I did.

"Q. Did you ascertain at that time, as you were talking to her and advis-

ing her of these rights, what education she had had?

"A. I did, yes, sir.

"Q. What education?

"A. She advised that she completed the tenth grade of formal education.

"Q. And did you determine at that time her age?

"A. I did, yes, sir.

"Q. What was her age at that time?

"A. At that time she was 19 years of age.

"Q. Did you ascertain at that time whether she could read and write the English language?

"A. I did, yes, sir.

"Q. And what did she say?

"A. She advised that she could.

"Q. After advising her—did you advise her of these rights orally?

"A. I advised them orally, and she read along with me on the Waiver of Counsel by Defendant in Custody, that I had filled out."

Defendant signed a waiver of rights which, along with the statement, appears in the record at page 354 et seq. Both were admitted in evidence.

The witness also testified that prior to the defendant's statement, "he nor anyone in his presence in the sight, presence or hearing of the defendant offered her any reward or hope of reward or other inducement to get her to make a statement or made any threat or used any force against her to get her to make a statement" (Tr. 337).

It is true that the waiver which the defendant signed referred only to murder and not to robbery or assault with intent to murder for which she was also indicted. The instant trial was for murder. Infor-

mation imparted to the defendant that she was charged only with murder was sufficient. We pretermit discussing the legal availability of the waiver and statement for use in the trial of the other charges.

There was no error in admitting this waiver and statement in evidence.

### III.

Ten agents of the Federal Bureau of Investigation, acting under a valid federal warrant of arrest of the defendant and her three companions, entered the Delmar Motel in California, where all four of the fugitives were housed, and forthwith placed all of them under arrest. The officers did not have a search warrant.

It appears that the four fugitives were all in the motel room that accommodated two single beds, one double bed and a dresser. Inside the dresser drawers, within reach of the defendants or some of them, were some knives. They were in plain view of the officers. The drawers containing the weapons were partially open and by looking in the openings the weapons were in plain view and subject to seizure without a search warrant as an incident of arrest. *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777; *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The officers were also authorized to seize a pair of white boots in the constructive possession of the defendant, lying in a closet of which the door was open, and hold them for evidence. Such seizure was authorized under *Preston* and *Chimel*, supra. These weapons and items, after proper sequence of possession was established, were properly admitted in evidence. They shed light on the res gestae of the crime. The boots were the property of Mrs. Froney, who identified them when she testified. They were in the motel room and only one female was in there who could have worn them. The defendant admitted in her voluntary statement that she took the boots from the camper.

Defendant was not prejudiced by her suggestion to the arresting officer that she get her clothing in the closet. The officer gave her the boots and then retrieved them after another officer suggested the evidentiary value of the boots.

The trial court did not commit error in admitting the boots in evidence over defendant's objection because the defendant was not given the Miranda warning when she importuned that her clothing be given her.

## IV.

It appears from the evidence that appellant aided and abetted one or more of the three male indictees in killing their victim, Burt Michael Froney. Appellant by such aid became a principal. Title 14, § 14, Code of Alabama 1940.

Mrs. Froney, wife of the victim, testified that as she came out of the bathroom she was confronted by the defendant with a knife poised about waist high and directed toward the witness. The three men were hovered over her husband, and her husband said:

" 'Just take the motor home, take our money, but just don't hurt us.' "

Her husband was killed then and there. Mrs. Froney further testified that the defendant at the time told her, " . . . to take it easy and nothing would happen to me" (Tr. 186).

This evidence was sufficient, when considered with all the other evidence relative to the crime, to support an inference that defendant was an accomplice under Title 14, § 14, supra. *Lee v. State,* 51 Ala.App. 332, 285 So.2d 495, cert. den., 291 Ala. 787, 285 So.2d 500; *Morris v. State,* 146 Ala. 66, 41 So. 274, 280; *Jones v. State,* 174 Ala. 53, 57 So. 31.

## V.

It appears from the record as follows:

"MR. LANE: If it please the Court, in light of some of the requested additional instructions to the panel, I would respectfully request Number 29 be explained to the panel again.

"THE COURT: Number 29?

"MR. LANE: Yes, sir.

"THE COURT: No, he asked me about 22.

"MR. LANE: Well, I renew my request.

"THE COURT: No, sir. You can have an exception. We can't just keep going over everything. I tried to make it as clear as I possibly could do it. You heard all of the testimony. You heard Mrs. Froney and you heard her testimony and she was the only person there and you heard her testimony about everything that happened during that incident."

After the jury retired the following colloquy took place:

"THE COURT: What says the State?

"MR. WRIGHT: Satisfied, Your Honor.

"THE COURT: What says the defendant?

"MR. LANE: If it please the Court, I have an objection to make out of the presence of the jury and they are not here now.

"First of all, Judge, I believe you stated in your last few statements to the jury panel, 'you heard Mrs. Froney testify—' words to the effect, and her testimony is that she was the only person that was there, or something to this effect and we believe there is other evidence adduced in this trial, namely, the statement of Karen Jordan, who also was there. And I feel this was misleading and that—"

The last exception after the jury retired for deliberation referred to observations of the court to the jury that were a part of

the court's oral charge. The exception, after the jury retired for deliberation, came too late. Such exception to the oral charge must be made in the presence of the jury and before they leave the box. *Bentley v. Lawson,* 280 Ala. 220, 191 So.2d 372; *Webb v. City of Birmingham,* 279 Ala. 272, 184 So.2d 352; Vol. 18A Alabama Digest, Trial ⚷273.

The conduct of the trial and the court's rulings are free from error. The judgment is due to be affirmed.

Affirmed.

ALMON, TYSON, HARRIS and De-CARLO, JJ., concur.

CATES, P. J., not sitting.