Appellant was indicted for the first degree robbery of $162.00 from Jean Starling by use of a deadly weapon, a shotgun. Appellant waived the reading of the indictment at arraignment and pled not guilty. The case was tried before a jury and appellant was found guilty. Following a presentencing investigation, the trial court sentenced appellant to imprisonment in the State penitentiary for ten years. Appellant filed notice of appeal and a motion for new trial. The court denied the motion for new trial and this appeal followed.
At the close of the State's case, appellant moved to exclude the evidence because of the failure of the State to prove appellant's involvement in the alleged crime. The trial court denied appellant's motion. We set forth here in detail the evidence which sustains the trial court's ruling on appellant's motion.
Jean Starling, the victim, operated a convenience store, Compac Store # 12, at Tillman's Corner in Mobile County, Alabama. On February 6, 1980, at approximately 2:30 a.m., she noticed a small automobile with three occupants parked directly in front of the store. The male driver and a female passenger sat in the front seat, while another man occupied the back seat of the vehicle. The driver got out, came into the store, and purchased cigarette papers. He looked around the store, asked about ice cream, and then said to Ms. Starling:
 ". . . `See that fellow in the back seat of the car? He's got a gun on you, and he is going to kill you if you don't give me the money.'"
At first, Ms. Starling thought he was joking with her, but as she looked more closely she saw that the man in the back seat of the vehicle had a shotgun pointed at her. She immediately gave the money to the driver, Oliver Ray Hall. Hall left the store and said something out of Ms. Starling's hearing to the female passenger, the appellant herein, to which appellant responded. Hall then returned to the store and stated Ms. Starling did not give him all the money, so they were going to kill her. At the same time, the appellant and the other man, Kenneth Burkett, both started to get out of the car. This so scared Ms. Starling that she reached for her gun and shot Hall. Hall staggered out of the door and was helped into the sedan by his two accomplices. They left in their vehicle and were followed immediately by a local law enforcement officer, Detective Ray Price, who had observed the trio's suspicious behavior at the scene. Ms. Starling stated they took approximately $162.00 from her.
Detective Roy K. Price of the Mobile County Sheriff's Office testified he was at Tillman's Corner early on the morning of February 6, 1980, at the Sheriff's Office substation, directly across from the Compac Store where the robbery occurred. He observed a two-door red sedan occupied by three individuals parked at the side of the store. After several minutes they drove to the front of the store, and, after a short while, left the store. Because they did not go into the store or use the telephone, Price became suspicious and followed them without turning on his lights. The vehicle went a short distance, then turned around, returned to the store, and parked in front of the store. When Detective Price arrived Hall was at the counter in the store, while the other two remained in the automobile. Price observed appellant get out of the right front seat, stand beside the vehicle for a minute or so, and then get back into the sedan as Hall exited the store. About the same time, Price heard shots fired, then saw Hall jump into the driver's seat and take off in the vehicle with the two accomplices. Price fired four shots to disable the vehicle and took off in pursuit. After traveling a short distance the sedan pulled off the road and stopped. When Price reached the vehicle door, Hall and the male passenger had exchanged places, and Burkett was behind the wheel. Price observed through the open door a handful of money on the front seat. Appellant was seated in the right *Page 44 
front seat, while Hall occupied the back seat. There was a quantity of beer and cigarettes on the back seat and a shotgun partially covered with a blanket.
Appellant was arrested by Detective Price and taken to the Mobile County Sheriff's Office, where she was informed of her rights. After signing a waiver of rights form, appellant made a voluntary oral statement, which was transcribed by Detective Price. Price testified appellant appeared to have been drinking but was not intoxicated at the time she made the statement. Appellant testified on voir dire, however, that she was drunk when the statement was taken, having drunk beer and vodka the entire preceding day, but that she had understood her rights when she was informed of them. Cynthia Hicks, a friend of appellant, also testified on voir dire that appellant had been drinking heavily the day before the robbery and was drunk when she last saw her at 12:00 midnight, shortly before the robbery occurred.
Over appellant's objection, her statement was received into evidence. Detective Price read the statement aloud from the stand and his narration appears in the record as follows:
"(As read from statement.)
"Q. What is your full name?
"A. Katherine Miller.
"Q. What is you address and phone number?
"A. 6229 Tillman Drive, Mobile, Alabama. No phone.
"Q. How old are you, and what is your date of birth?
"A. Thirty-three. Five, 15 of '46.
"Q. How far did you go in school?
"A. Seventh grade.
"Q. Can you read?
"A. Yes.
"Q. Do you know who I am?
"A. Yes.
 "Q. Do you understand your rights as read to you before this statement?
"A. Yes.
 "Q. At about zero of 1:45 hours, two, six of '80, were you in Theodore?
"A. Yes.
 "Q. While you were in Theodore, what happened, if anything?
 "A. We pulled in front of the store. He said he was going to get some gas. He pulled off. He went back to the store. I have got to get some gas. Oliver went into the store. He was there for awhile, and I got out and told him to come on. He ran out and said, `I got shot.' We pulled off and there was gunshots. We pulled over to the side of the road, and that is when the law came.
"Q. How were you travelling?
"A. That red car.
"Q. Is this the car you were in when arrested?
"A. Yes.
"Q. Did you see Kenneth Burkett with the gun?
"A. No.
 "Q. Did you see Oliver Hall put money in the seat of the red car?
 "A. He had a handful of money when he came out of the store.
"Q. Do you know what name the store you was in . . ."
"THE WITNESS: Correction,
"Q. . . . you was at?
"A. I think it was a Compac.
"Q. Did you know the red car was stolen?
"A. Yes. I knew he didn't pay for it.
 "Q. Do you know where the beer and other items in the red car came from?
"A. Yes, they came from over there.
 "Q. Do you know the name of the store where the beer and other items came from?
"A. No.
 "Q. Did you know Oliver Hall was going to rob the Compac food store before he went into the store?
"A. No, I did not.
 "Q. Is there anything you want to add to this statement at this time?
"A. No.
 "Q. Is this statement true and correct to the best of your knowledge? *Page 45 
"A. Yes.
 "Q. Is this statement voluntary, and in your own words?
"A. Yes.
 "Q. Were you threatened or promised anything for making this statement?
"A. No.
"Signed, Katherine Miller. Witnessed, Roy K. Price."
Walter Crook, a Baldwin County Deputy Sheriff, testified he also questioned the appellant, along with Detective Price, at the Mobile County Sheriff's Office on February 6, 1980. Crook questioned appellant as to a burglary of a store and the theft of an automobile that had occurred earlier in the afternoon in Baldwin County. Appellant told Crook she had been with Oliver Hall earlier in the day and that they took an automobile and later broke into a store in the Magnolia Springs Community. Crook stated appellant appeared to be sober at the time he questioned her.
The State rested following Officer Crook's testimony. The defense made a motion to exclude the State's evidence, which the trial court denied.
Katherine Miller, the appellant, testified in her own behalf. She stated she was drunk at the time the robbery took place, having been drinking beer and vodka all day long. She testified she did not know the store was going to be robbed and thought Hall was merely stopping to get gasoline in order to take her home to Theodore, Alabama. Appellant's version of the robbery appears as follows:
 "Q. When the car did come to the Compac store, did you direct the driver to go there to tell him to go there, or anything of that sort?
"A. No, I did not.
"Q. Did he ask you anything about going there?
"A. No.
"Q. Did he say why he went there?
"A. To get some gas, is what he said.
 "Q. What happened after the car got there to get some gas?
 "A. Well, he went in and he was in the store for awhile, and then I started to get out and see why he, you know, hadn't come back out, and when I started to get out, I seen him coming out. So, I set back down. And then he ran and jumped in the car and started holding his stomach, and he said, `I was shot.' You know, and I didn't believe him. You know, I thought he was joking. And then he, you know, he started groaning, he said, `I'm shot,' and I looked and he had blood. I just went hysterical."
Appellant further testified that, earlier in the day, she was with Oliver Hall when he picked up from an automobile dealer the keys to a red vehicle which she thought Hall was going to test drive. Later that day, she stated the red vehicle in which she was a passenger, and which Hall was driving, "smashed into a store" in Magnolia Springs. She did not know if it was an accident or on purpose, but she did remember Hall looting the store. She could not recall if she stole anything because she was so drunk. Appellant testified on cross-examination as follows:
 "Q. Well, you were riding around with him half the night with a bunch of stolen property in the car, were you not?
 "A. Well, I knew he done that. He had crashed the door down.
 "Q. All right, and you knew there was a lot of stolen property in the car, did you not?
"A. Yes.
 "Q. And, you knew that the car should have been returned, did you not?
"A. I suppose, yes."
The appellant also called several witnesses who testified as to appellant's good reputation in the community, after which the defense rested.
Appellant asserts the evidence presented by the State did no more than show her presence at the time and place of the crime, and hence was insufficient to present a question for the jury and should have been excluded by the trial judge. We acknowledge the principle that mere presence *Page 46 
does not make one a party to a crime, but we must stress the fact that the term "aiding and abetting" encompasses all assistance rendered by a party's acts, words of encouragement or support, or presence, actual or constructive, to render assistance in the event it becomes necessary. Watkins v. State, Ala.Cr.App., 357 So.2d 156, cert. denied, Ala., 357 So.2d 161. The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved. Fullerv. State, 43 Ala. App. 632, 198 So.2d 625. Rather, the jury must examine the conduct of the parties and the testimony as to the surrounding circumstances to determine its existence. Fuller, supra; Watkins, supra.
We find there was legal evidence before the jury, at the time appellant's motion was made, from which the jury could by reasonable and fair inference have found appellant aided and abetted in the robbery of Ms. Starling. Stewart v. State, Ala.Cr.App., 350 So.2d 764. The jury could have considered appellant's presence in connection with her companionship, as well as her conduct before, during, and after the perpetration of the crime. Thomas v. State, Ala.Cr.App., 363 So.2d 1020. This robbery was the culmination of a twelve-hour crime spree by appellant and her two companions, involving multiple crimes in two different counties. Appellant admitted in her statement to Officers Price and Cook that she was aware the automobile in which they were traveling was stolen, and that she and Hall had broken into a store in Baldwin County. The testimony of Detective Price evidenced the presence and suspicious behavior of appellant and her companions at the scene of the crime prior to the time they returned to rob the store. And finally, the victim herself testified that it was only after Hall went outside the store and conversed with appellant that he returned to the store and stated they were going to kill her because she had not given him all the money. It was this statement in conjunction with appellant's motions toward exiting the vehicle which caused Ms. Starling to fire upon Hall. Certainly the circumstances surrounding appellant's actions before the robbery, her presence at the robbery, and her movement toward the store when Hall threatened to kill Ms. Starling presented ample evidence from which the jury could determine appellant's culpable participation in the robbery.
Statements of appellant pertaining to her involvement with Oliver Hall in the theft of an automobile and the burglary of a grocery store in Baldwin County, which occurred shortly before the robbery of Ms. Starling, were admitted into evidence over appellant's objections. Appellant argues evidence of separate crimes was inadmissible because of the extremely prejudicial effects of such evidence.
The general rule of law is that evidence of other or collateral crimes is not admissible as substantive evidence to establish the guilt of the accused of a particular crime.Johnson v. State, Ala.Cr.App., 335 So.2d 663, cert. denied, Ala., 335 So.2d 678 (1976), U.S. cert. denied, 429 U.S. 1026,97 S.Ct. 649, 50 L.Ed.2d 629 (1976). There are, however, well established exceptions to this rule. Wharton's CriminalEvidence, § 31, sets those exceptions forth as follows:
 "`These exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws.'"
Appellant's awareness of, involvement in, and presence during the theft of the automobile, as well as the burglary of *Page 47 
the grocery store, were properly admissible in the instant trial as evidence of her intent and guilty knowledge in relation to the robbery of Ms. Starling. These collateral crimes were by necessity admissible to show intent and knowledge existed from the circumstances. Bobo v. State,56 Ala. App. 622, 324 So.2d 336; Mason v. State, 259 Ala. 438,66 So.2d 557. Appellant contended she was merely along in the automobile, without knowledge of or involvement in the crime. Her intent and knowledge thus became relevant and crucial issues. The evidence of collateral crimes was properly admissible for the purpose of negating her assertion of lack of intent and knowledge and was relevant and competent regardless of any incidental effect. Bobo, supra; Wilkins v. State,29 Ala. App. 349, 197 So. 75, see also McKenzie v. State,33 Ala. App. 7, 33 So.2d 484, cert. denied, 250 Ala. 178,33 So.2d 488.
We find further that the admission of the other crimes was properly admissible as part of the res gestae, in that all of the criminal acts were part of one continuous criminal adventure by the same parties occurring within a matter of hours. Summers v. State, Ala.Cr.App., 348 So.2d 1126, cert. Ala., 348 So.2d 1136; Moseley v. State, Ala.Cr.App.,357 So.2d 390.
Appellant contends she was entitled to have the jury instructed by the trial judge as to the limited purpose for which evidence of other crimes was admitted at trial and that the court's failure to so instruct was reversible error.
Where evidence is admissible for one purpose, the trial court will receive it into evidence, despite the fact that there may exist some other purpose for which it is not admissible. When such evidence is admitted against an appellant, it is the sole responsibility of the appellant to request the court to instruct the jury as to the limited and proper purpose for which such evidence is admitted. If the appellant failed to request such an instruction, she may be considered to have waived the right to the protective instruction. Robinson v.State, Ala.Cr.App., 361 So.2d 379, Ala., 361 So.2d 383. We have held that the evidence was admissible for a legal purpose. If appellant perceived a different and harmful effect flowing from such evidence, it was her duty to request a special charge on that subject. Houston v. State, 203 Ala. 261, 82 So. 503.
It appears appellant did make an allusion, orally, to a limiting instruction after the court completed its oral charge. However, appellant on appeal bears the onus of bringing a record before the appellate court. Core v. State, 50 Ala. App. 533, 280 So.2d 794, 291 Ala. 776, 280 So.2d 797 (1973). Counsel must submit written instructions to the trial court covering the omitted principle of law in order to preserve the potential error for appellate review. Gray v. State, 52 Ala. App. 48,294 So.2d 448; Thigpen v. State, Ala.Cr.App., 369 So.2d 291, writ denied, Ala., 369 So.2d 297.
 "[W]here a party desires the court to extend its oral charge to cover some applicable law in the trial of a case, his remedy is to request a written charge on the subject, which if refused would protect the record and present the matter to the Appellate Courts. The rules governing objections and exceptions to the oral charge of the court either in the matter of what the court says or does not say require that if the objection is to what the court did say the remedy is only by exception thereto (Passmore v. State, 47 Ala. App. 189, 252 So.2d 115), and if the objection is to the court's refusal or omission to charge on a particular subject applicable under the evidence the procedure is by way of a requested written charge. (Lewis v. State, 42 Ala. App. 166, 157 So.2d 38; Trenholm v. State, 38 Ala. App. 57, 77 So.2d 491). Smith v. State, 53 Ala. App. 657, 303 So.2d 157."
It is also true that a trial judge may not fix a particular time during the trial by which written charges must be tendered to the court. Johnson v. State, Ala.Cr.App., 365 So.2d 123, writ. denied, Ala., 365 So.2d 130. However, in the instant *Page 48 
case, the matter is not before us for review, because no requested written charge covering the principle of law appellant argues was omitted was presented to the trial court, nor is it in the record for our review. Bowens v. State,54 Ala. App. 491, 309 So.2d 844, cert. denied, 293 Ala. 746,309 So.2d 850; Johnson, supra.
Without the presence of written charges in the record, it would require this court to resort to "speculation and to guess" what the proffered charges would have said. Johnson, supra. This issue was not properly preserved for review.
Appellant argues the trial court omitted to charge the jury as to the meaning of one element of the offense charged, in that he failed to define his use of the term theft, as it relates to intent. It is, of course, a mandatory duty of the trial judge to instruct the jury orally on the different and distinguishing elements of the offense charged. Davidson v.State, Ala.Cr.App., 360 So.2d 728, writ denied, Ala.,360 So.2d 731. Appellant orally excepted to the court's oral charge in this particular but did not request a written charge. However, we have reviewed the court's oral charge and find that the trial court in the course of his oral charge did in fact adequately explain the term "theft" as it relates to intent. The court charged the jury as follows:
 "Therefore, in order to find a Robbery in the First Degree offense, you must find that the Defendant in this case, Katherine Miller, committed or attempted to commit theft from the person or presence of the named party in the indictment, Mrs. Starling, I have forgotten her first name, and that in the course of committing or attempting to commit the theft, the Defendant, Katherine Miller either used force or threatened the imminent use of force against the person of Mrs. Starling with the intent to overcome her physical resistance or physical power to resist or to compel acquiescence to the taking of or an escaping with the property." (R. 154)
We find no merit in appellant's contention.
Appellant contends the trial court failed to adequately instruct the jury on the element of "intent to promote or assist the commission of the offense" as it relates to the phrase "aid and abet." Defense counsel objected to the court's oral charge in this particular. The record reflects the following oral charge:
 "Now, the law relating to aiding and abetting would, of course, apply where you find from the evidence, that the Defendant was actively participating in a plan preconceived with knowledge of what was to be done. And, although no specific acts were carried out by such a Defendant, if such a Defendant were there, available, and ready and able to aid and help or abet, provide assistance to those principals actually carrying out the named crime for which the Defendant would be charged, then that, in that regard, such assistance being present and available to aid those principals carrying out the offense named in the indictment would, in effect, require that the Defendant be found guilty of the same crime as the principals carrying out the particular physical actively acting in committing the crime."
We have reviewed the court's charge in this respect and find that it correctly and fully covers this element.
The trial court's oral charge to the jury pertaining to the resolution of conflicts in the evidence appears in the record as follows:
 "Now, I told you initially in your consideration of the evidence, that there is a rule that you must presume all witnesses speak the truth who testify before you. And that means that there is nothing in conflict with what a witness says. You must, by the law, presume that that witness is speaking the truth. If other evidence leads you to question that particular witness' statement or testimony before you, then, of course, that's when you must apply your common sense and these factors in making the determination of wherein the truth lies as to that particular conflict. *Page 49 
 "Now, you do that by assessment of that witness' testimony. Your complete observation to that witness testifying, their interest in the case, any bias or prejudice they may have, any animosity or hate or ill will towards one person or another, the Defendant or someone else, or their position, their job, and consider all those factors assessing the credibility and weight you are going to assign that particular witness in ascertaining whether the witness' version is the one you are going to believe as the most truthful, or whether the other evidence that is in conflict, which should be believed.
 "The law places that burden entirely on your shoulders, because you must, of course, resolve any conflict which relates to a material aspect in the case. That means something that would affect the guilt or innocence of the Defendant. So, each witness should be judged on that basis where their testimony is in conflict with other evidence. Every witness who took the stand must be given that test, including the Defendant who has a right, of course, to testify in her behalf, but who, under the law, you are required to consider this element that she is the Defendant on trial when you consider and assess her testimony that is transferred to you."
At the close of the court's oral charge the jury retired to the jury room to commence deliberations. At this time appellant's counsel made several objections to the oral charge.
It is settled law in this state that exceptions to the oral charge must be made in the presence of the jury and before they leave the box, and any subsequent objection or exception cannot be considered on appeal. Jordan v. State, 56 Ala. App. 55,318 So.2d 793, writ. denied, 294 Ala. 761, 318 So.2d 801; McNair v.State, 50 Ala. App. 465, 280 So.2d 171, certiorari denied,291 Ala. 789, 280 So.2d 177.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.